OPINION OF THE COURT
Raymond Harrington, J.
“I don’t remember anything”.
“My mind went blank”.
“I blacked out”.
“I panicked and don’t remember what I did or anything that happened”.
So often those of us who habituate the criminal courts have heard such statements or testimony from the accused in a criminal case. A variation on this theme, in the Grand Jury testimony of this defendant has raised legal issues concerning that proceeding. This defendant was indicted for leaving the scene of an incident as a felony and driving while impaired (Vehicle and Traffic Law, § 600, subd 2, pars a, b; § 1192, subd 1).
In fact, Douglas Hager told the Grand Jury the following concerning a collision between his car and a young female pedestrian Katherine Kuehhas, who was in a coma at the time of the Grand Jury presentation.
*124 “Text as edited p. 70-72 Grand Jury testimony of Hager * * * T tried to step on my brakes, but probably by the time I could respond to it, I hit her. She came rolling over the front of my car, hit my windshield and shattered it and rolled into the street to my left. I immediately pulled over to the right side by the curb and then I looked out my window and saw her lying there and I noticed several people were hurrying over to see if, I assume, to help the girl.’
“ ‘At that point in time I don’t know what came over me, but I felt — I was horrified. I couldn’t believe this girl walked out in front of my car like this. I couldn’t believe this was happening to me. I just kept seeing this girl come up over the front of my car and I guess I saw — I kept picturing all the horrible things that ever happened in my life including the death of my grandparents, the break up of my marriage, my divorce and the next thing I remember I found myself driving down Hempstead Turnpike. I don’t even know why. I don’t remember ever doing it, but I think what sort of snapped me out of that was the flashing yellow lights of the emergency vehicle right behind me. I must have gotten probably a half mile from the accident and I pulled over to the side — I don’t know why I did it. I did not intend to leave that scene of the accident. I have no other explanation as to why I left other than I guess the horror of the situation that I had just been through did something to me.’ ”
More particularly, upon inspection of the Grand Jury minutes, the defendant through his attorney seeks dismissal of this indictment on the grounds that it is defective on its face, the proceedings were defective in that the prosecutor did not instruct the Grand Jury on the proper principles of law and the prosecutor improperly cross-examined the defendant. In the alternative to dismissal, the defendant asks for a bill of particulars.
Because the indictment is clearly sufficient on its face People v Iannone (45 NY2d 589) and, it is evident that the prosecutor’s questions to the defendant were fair (and even required) in view of the whole case, those motions to dismiss are summarily denied.
*125 On the other hand, the defendant’s attack on the legal instructions to the Grand Jury raises fundamental questions concerning the mental state needed to establish the crime of leaving the scene of an incident. Relying upon the presumption against strict liability offenses, the defendant petitions this court to require that the People prove that the defendant intentionally left the scene of the accident before criminal liability will exist. This the defendant submits should be so, even though the language of the statute omits any such word or phrase expressing a culpable state of mind with respect to the element of leaving the scene.
The People, relying on People v Calbud, Inc. (49 NY2d 389), assert that they have instructed the Grand Jury on the statutory language and no more is required. In any event, the People assert that section 600 of the Vehicle and Traffic Law is a strict liability offense and the People need not establish any culpable state of mind by the defendant as to his leaving the scene.
THE CRIME
Section 600 of the Vehicle and Traffic Law provides in pertinent part that:
“2. a. Any person operating a motor vehicle who, knowing or having cause to know that personal injury has been caused to another person, due to the culpability of the person operating such motor vehicle, or due to accident, shall, before leaving the place where the said personal injury occurred, stop, exhibit his license and insurance identification card for such vehicle * * * and give his name, residence * * * insurance carrier and insurance identification information and license number, to the injured party, if practical, and also to a police officer, or in the event no police officer is in the vicinity of the place of said injury, then, he shall report said incident as soon as physically able to the nearest police station or judicial officer * * *
“Any violation of the provisions of this subdivision, other than mere failure of an operator to exhibit his license and insurance identification card for such vehicle, where the personal injury involved results in death or serious physical injury as defined in section 10.00 of the penal law, shall *126 constitute a class E felony.” (Vehicle and Traffic Law, § 600, subd 2, pars a, b.)
Section 600 of the Vehicle and Traffic Law is also known in, the vernacular, as the New York “hit and run” statute. Section 600 and its predecessor statutes have been in existence since the advent of the industrial revolution and the general prohibition against “hit and run” is a concept commonly understood by modern man. (See, generally, Morissette v United States, 342 US 246.)
The People have asserted that section 600 of the Vehicle and Traffic Law is a strict liability offense. (People v Leigh, 19 Misc 2d 675.) Often, such offenses are called mala prohibita, i.e., no mens rea, or culpable state of mind being required. (People v Pinnock, 207 Misc 1097.) Such offenses are not in harmony with the common-law concept that a wrongful act be accompanied by a guilty state of mind. (1 Wharton, Criminal Law, § 23.)
Our Legislature has conveyed the message consistently that “strict liability” crimes are to be frowned upon. “Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability.” (Penal Law, § 15.15, subd 2.) Also, “Generally, it is reasonable to assume that it is the design of the Legislature to punish as criminal offenses only those acts which are intentionally committed. Accordingly, if it is practicable to avoid a construction of a statute which eliminates intent as an element of a crime, the courts will do so.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 274.)
Section 600 has the apparent indicia of a crime of strict liability in that it is not in the nature of an act of positive aggression and the accused, if he does not will the violation, usually is in a position to prevent it with no more than reasonable care. Furthermore, the penalties have up until recently, been relatively small. (See L 1980, ch 228.)
*127 On the other hand, as it presently exists and is charged in this indictment, the crime is now a felony. Under these circumstances, the courts should be even more resolute in avoiding a strict liability construction.
STATUTORY CONSTRUCTION
Both parties overlook a significant fact in section 600 of the Vehicle and Traffic Law. The statute requires that the defendant “knowing or having cause to know that personal injury has been caused * * * due to [his] culpability * * * or * * * accident,” leave the scene of the incident. This is indeed a culpable state of mind.
“When one and only one of such [culpable mental state] terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears.” (Penal Law, § 15.15, subd 1.)
The present charge would appear to require only one mental state, i.e., knowledge by the defendant as the operator of a motor vehicle that he has caused personal injury by his culpability or by accident. (See, generally, Necessity and Sufficiency of Showing in a Criminal Prosecution under a “Hit-and-Run” Statute Accused’s Knowledge of Accident, Injury, or Damage, Ann., 23 ALR3d 497.)
There is then in the first instance a question of statutory construction of section 600 of the Vehicle and Traffic Law under the principles of subdivision 1 of section 15.15 of the Penal Law. (See 7 Zett, NY Crim Prac, par 61.4.) The issue is whether the mental state of mind contained in the statute is presumed to apply to every element of the offense (including whether the accused left the scene knowingly or intentionally) or whether a statutory construction limiting the culpable mental state to mere knowledge by defendant of causation of a personal injury by an auto accident is the only state of mind the People need prove. The characterization of the issue presented here as whether this crime is a strict liability offense does not properly frame the issue. Accordingly, the opinions expressed in People v Leigh (19 Misc 2d 675, supra) and People v Pinnock (207 Misc 1097, supra) miss the mark when they characterized the predecessor statute as malum prohibitum. Those cases are not found to be probative of the issues raised in this case.
*128 It appears no court has considered this particular issue in New York and the only assistance this court has been able to obtain is in the Practice Commentaries to section 15.15 of the Penal Law (Hechtman, McKinney’s Cons Laws of NY, Book 39, Penal Law, p 34). As these commentaries point out, many of our more common nonstrict liability crimes have limited or specific intents. Criminal trespass (Penal Law, § 140.15) and possession of stolen property (Penal Law, § 165.40) are offered as examples of crimes in which this principle of statutory construction requires that the expressed intent apply to all the elements of the crime. Criminal possession of a controlled substance (Penal Law, § 220.03) and criminal mischief in the third degree (Penal Law, § 145.05) are offered as examples of penal statutes in which it “clearly appears” that the Legislature intended to limit the intent to a specific scienter requirement.*
How clearly it appears that the Legislature intended to limit scienter in section 600 of the Vehicle and Traffic Law or indeed in the commentator’s examples is a perplexing question. What is certain is that the principle of statutory construction is one that requires, emphasizes and insists that intent be engrafted upon every element of the offense unless the intent to limit is patently clear. The criminal law requires historically a culpable state of mind for every crime. The common law demanded that for any crime that there be a “vicious will”. (Morissette v United States, 342 US 246, supra.) “The existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence” (Dennis v United States, *129 341 US 494, 500). This court therefore concludes that not unlike the presumption against strict liability offenses, this principle of statutory construction should be viewed presumptively in favor of the general applicability of intent to every element of the offense.
More particularly, the court finds fault with the criminal mischief example prepounded by the commentator. Should a defendant be convicted of the felony of criminal mischief (or indeed, grand larceny) where the jury finds that the defendant intended to damage property which he concluded was worth less than $250 (or steals property which the defendant concluded was worth less than $250)? Should any Trial Judge accept a guilty plea under such factual circumstances? The court thinks not, especially, where felonious liability attaches to defendant’s conduct.
Therefore, giving great weight to the presumption against limited scienter, and considering the consequences of guilt of a felony with limited intent the court concludes that “knowingly” applies to the element of leaving the scene of an accident as well as to knowledge of the accident. Fundamentally the crime is “hit and run”. The court believes that before the defendant should be held feloniously responsible for this crime, the People should be required to show knowledge by the defendant of the “hit” and that the “run” or leaving was knowing.
VOLUNTARY ACTS
The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or omission to perform an act which he is physically capable of performing. (Penal Law, § 15.10.) A “voluntary act” is one “performed consciously as a result of effort or determination”. (Penal Law, § 15.00, subd 2.) This definition excludes reflex actions or bodily movements performed during unconsciousness, hypnosis, amnesia and similar states. (See 7 Zett, NY Crim Prac, par 61.2 [1]; Amnesia as Affecting Capacity to Commit Crime or Stand Trial, Ann., 46 ALR3d 544.) It appears that this defendant’s version of the events as testified to the Grand Jury supports a conclusion that he suffered from some hybrid form of amnesia. The court also concludes that a defendant should also only be held feloniously responsible for “voluntary acts”.
*130 CONCLUSIONS
Under all the circumstances, this court holds that the failure of the prosecutor to instruct the Grand Jury on the applicability of the concepts of knowledge to the leaving the scene of the incident and also related concepts of intoxication and voluntariness of the acts alleged went to the essence of defendant’s criminal responsibility and the most salient factual issue before the Grand Jury.
Without commenting on the credibility or incredibility of Mr. Hager’s testimony, the Grand Jury is entitled to be guided by the essential principles of law. The failure to so instruct the Grand Jury made it impossible in these circumstances for that body to decide intelligently whether the defendant committed the crime and that failure impaired the integrity of the entire proceeding (CPL 210.35, subd 5; 190.25, subd 6; People v Calbud, Inc., 49 NY2d 389, supra).
Count 1 of the indictment is therefore dismissed. All other applications are denied as moot. The People are granted leave to re-present this entire matter to another Grand Jury within 45 days. The defendant shall remain at liberty on his present bail status pending the action of the Grand Jury (GPL 210.45, subd 9). No sealing order shall issue pursuant to GPL 160.50 until the vacating of this securing order pursuant to GPL 210.45 (subd 9). The motion to dismiss count 2 of the indictment is denied. It remains in effect.

 The Practice Commentaries read as follows: “The rule stated in the last sentence of subdivision 1 is important in the construction of many ensuing provisions. Illustrative is a section rendering guilty of criminal trespass in the second degree a person who ‘knowingly enters or remains unlawfully in a dwelling’ (§ 140.15). Pursuant to the indicated rule, the intruder must know not only that the building which he enters is a dwelling but also that his entry is unlawful. Similarly, in order to ‘knowingly possess stolen property’ (§ 165.40), one must know both that he is in possession of the property involved and that it is stolen. On the other hand, one ‘knowingly and unlawfully possesses a controlled substance’ (§ 220.03) when without authorization he is in possession of a drug which he knows to be cocaine, regardless of whether he knows his possession thereof to be unlawful. Here, the intent ‘to limit’ the scienter requirement to the content of the drug and not to extend it to the unlawful character of the possession ‘clearly appears.’ Again, with respect to the crime of criminal mischief in the third degree, requiring property damage.in excess of $250 (§ 145.05), it ‘clearly appears’ that one need only intend ‘to damage property of another person’ and that intent that the damage be in excess of $250 is not an element of the crime.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 15.15, p 34.)