THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
JAMES B. DORSEY, JR., Respondent.

Third Department, June 14, 1984

### APPEARANCES OF COUNSEL

*David A. Wait, District Attorney* (*Thomas J. McNamara*
of counsel), for appellant.

*McMahon & McMahon* (*John L. McMahon* of counsel),
for respondent.

### OPINION OF THE COURT

LEVINE, J.

During the early morning hours of March 5, 1983, local
police found Leonard Younes lying eight feet off the east
side of Kaydeross Park Road in the City of Saratoga

Springs. Younes was apparently seriously injured and barely conscious. He was taken to the emergency room of Saratoga Hospital where he was diagnosed as having incurred a fractured skull with extensive brain damage and two fractured legs. He was transferred to Ellis Hospital in Schenectady where he subsequently expired. The police concluded that Younes had been the victim of a hit-and-run driver. From their investigation, the police believed that Younes had been walking with the traffic in a northerly direction at about 3:00 A.M. when he was struck by a red or yellow-colored car. This information was given to the news media and defendant heard a radio broadcast to that effect during the afternoon of the same day. Because he had been driving his sister's red Pontiac in the vicinity of the accident at around the time it reportedly took place and had noticed a fresh dent in the hood of the car, defendant discussed the subject with his father, who then notified the Saratoga police of the possibility that his son had been involved. The police came to defendant's residence, obtained a written statement from him and then took samples of paint from the subject automobile which they sent to the FBI laboratory in Washington, D. C., along with the victim's clothing, for testing. Defendant was subsequently arrested and indicted for leaving the scene of an accident as a felony (Vehicle and Traffic Law, § 600, subd 2). County Court permitted inspection of the Grand Jury minutes and then granted defendant's motion to dismiss the indictment, without leave to resubmit, on the ground that the evidence presented to the Grand Jury was legally insufficient. This appeal by the People followed.

■ We reverse. The Grand Jury was given defendant's statement in which he admitted driving over the road where the victim was found after leaving a local nightclub within the pertinent time frame. Defendant was unable to explain how the hood of the car he was driving became dented that night, although he acknowledged that he had struck something along the accident route without stopping to investigate further. The rear of his vehicle had also come in contact with a fence post, leaving paint fragments, when he had earlier skidded while exiting the nightclub. The Grand Jury also heard testimony from FBI Agent

James Corby, the prosecution's expert, as to his scientifically testing and comparing known samples of paint from the suspect vehicle with particles of paint found on the victim's jacket, slacks and shirt. The known samples from the vehicle contained nine strata, consisting generally of alternating layers of red metallic paint and grey or black primer. A particle recovered from the victim's jacket contained eight layers of paint similar in color, composition and other properties to the top eight layers of the known sample from the vehicle. Particles from the victim's shirt and slacks similarly matched several layers of the paint chips taken by the police from the vehicle. None of the particles contained properties inconsistent with the control specimens. Based upon the foregoing findings, Agent Corby concluded that the particles of paint he had examined had become embedded on the victim's clothing as a result of contact with the vehicle defendant had driven that night.

At the request of defendant's attorney, exculpatory evidence was also presented to the Grand Jury. It consisted of the testimony of defense expert Vincent Colangelo and transcripts of the testimony of Agent Corby and of a local auto repairman at the preliminary hearing conducted following defendant's arrest. Colangelo had performed similar tests on chips of paint he extracted from various areas of the suspect vehicle. He did not dispute Agent Corby's procedures or test results, but disagreed with Corby's conclusions based upon Corby's inability to match paint smears on the victim's trousers with the known specimens and upon the paucity of matching specimens from the victim's clothing. The repairman testified at the preliminary hearing that in October, 1982, he entirely repainted the suspect vehicle, applying one coat of primer and three coats of red enamel paint. The portion of Agent Corby's testimony at the preliminary hearing stressed by defendant was where he was asked to assume that the vehicle has recently been totally repainted with three coats of red paint and was then asked whether his opinion linking defendant's vehicle to the accident would remain the same, to which he answered no.

In ruling that the evidence before the Grand Jury was legally insufficient, County Court applied the standard of

proof required in circumstantial evidence cases, namely, that the evidence "must logically point to defendant's guilt and must exclude to a moral certainty every reasonable hypothesis of innocence" (citing *People v Miller,* 54 AD2d 742). Although we have no quarrel with the application of that principle to indictments based solely on circumstantial evidence, we have concluded that the standard was misapplied here in that County Court ignored equally applicable principles governing the quality of proof necessary in general to sustain an indictment and not permitting consideration of exculpatory evidence or the weighing of evidence on a motion to dismiss.

Defendant's motion could only be granted if the evidence before the Grand Jury was legally insufficient to establish the offense charged or any lesser included offense (CPL 210.20, subd 1, par [b]). The requirement of legal sufficiency is satisfied if there was "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10, subd 1). The evidence must be viewed in the light most favorable to the People, and exculpatory evidence may not be taken into account (*People v Warner-Lambert Co.,* 51 NY2d 295, 299, cert den 450 US 1031). The proof need not establish guilt beyond a reasonable doubt, however (Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 70.10, pp 705-706), or indeed, even " ' "reasonable cause" to believe that the defendant committed the crime charged' " (*People v Warner-Lambert Co., supra,* p 299; Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 70.10, pp 705-706).

The prosecution's evidence satisfied the foregoing criteria, even with any additional requirements of proof in circumstantial evidence cases. Defendant's statement placed the vehicle he was driving on the accident route at about the time the victim was struck. He admitted that he hit something in the general vicinity of where the victim was found, and that he failed to stop to see what he had hit. He was unable to explain how the hood of the car became dented. The scientific validity of the tests performed by Agent Corby was not cast into doubt. Agent Corby gave

competent opinion evidence to the effect that there was contact between defendant's vehicle and the victim. The prosecution's expert also had a plausible explanation for the dissimilarity between the paint taken from the frequently repainted vehicle and the paint smears on the victim's pants legs, namely, that they may have come off an area of the vehicle from which no sample had been taken. It was clearly permissible for the Grand Jury to have inferred, on the basis of the foregoing prosecution evidence, that the car defendant was driving struck Younes with sufficient force to cause his injuries, as well as the dent to the hood of the vehicle, and that from these circumstances, defendant knew or had cause to know that he had struck and injured someone and should, therefore, have stopped to ascertain whether harm was done, as required under the statute (Vehicle and Traffic Law, § 600, subd 2, par a; see *People v Curtis,* 225 NY 519, 523; *People v Hakala,* 270 App Div 612, 614). These inferences were squarely grounded in the evidence presented and not upon any unsupported assumptions, and thus satisfied the requirements of proof in a circumstantial evidence case (see *People v Kennedy,* 47 NY2d 196, 203).

County Court arrived at its contrary conclusion essentially in reliance on two factors. The first of these was Agent Corby's answer to the hypothetical question posed to him on cross-examination at the preliminary hearing, in which he was unable to connect defendant's vehicle to the victim if the vehicle had in fact recently received three coats of red paint before the accident. The assumption contained in the hypothetical question was based upon the testimony of the repairman who was called as a defense witness. That testimony was clearly exculpatory evidence submitted to the Grand Jury at the request of defendant. The Grand Jury was free to reject the testimony, particularly since it was not only inconsistent with Agent Corby's findings, but also inconsistent with the findings of defendant's expert on the strata composition of the paint he took from the hood of the vehicle. The second factor relied on by County Court was the prosecution's inability to match the paint smears on the victim's trousers to defendant's vehicle. As previously discussed, however, the significance of this was disputed by the opposing experts, and

it was for the Grand Jury, not the court, to resolve that controversy. Nor, in view of the prosecution's evidence that the victim incurred massive head injuries, was there warrant for the court to have inferred that the fatal impact came from the contact of the victim with another vehicle which left the paint smears on his pants legs. For the foregoing reasons, County Court erred in concluding that the evidence presented to the Grand Jury was legally insufficient.

■ County Court's alternative basis for dismissal was also erroneous. It held that because the District Attorney violated an alleged agreement with defense counsel to present the preliminary hearing testimony of Agent Corby to the Grand Jury before it heard the testimony of the defense expert and to submit the reports of both experts, and because the District Attorney failed to charge the definition of "knowingly" to the Grand Jury, the indictment was subject to dismissal pursuant to CPL 210.35 (subd 5). That section only empowers the court to dismiss an indictment when the Grand Jury proceeding "fails to conform to the requirements of article one hundred ninety to such degree that the integrity thereof is impaired and prejudice to the defendant may result". The failure to charge the definition of "knowingly", however, was not fatal to the indictment (see *People v Calbud, Inc.*, 49 NY2d 389). Furthermore, even under the dubious assumption that defendant had somehow acquired a right to dictate the sequence and content of proof before the Grand Jury, he has made no showing whatsoever that the District Attorney failed to comply with the requirements of CPL article 190 or that he was in any way prejudiced by the way the Grand Jury proceedings were conducted. Examination of the Grand Jury minutes indicates that the Grand Jury received a fair and complete presentation of the exculpatory evidence which the defense asked to have submitted.

Accordingly, the order of dismissal should be reversed, on the law, the indictment reinstated, and the matter remitted to County Court of Saratoga County for further proceedings not inconsistent herewith.

MAHONEY, P. J., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Order reversed, on the law, indictment reinstated, and matter remitted to County Court of Saratoga County for further proceedings not inconsistent herewith.