OPINION OF THE COURT
Jan H. Plumadore, J.
On July 15,1984 at approximately 2:15 a.m., the body of Jean Cox was discovered lying on the left side of County Route 7, otherwise known as the Gale Road. The autopsy revealed that she died as a result of extensive intracranial hemorrhage caused by a transverse fracture at the base of the skull due to blunt injury to the back of the head. As a result of the State Police investigation the defendant gave a statement which was introduced in evidence before the Grand Jury, the relevant portions of which are reproduced below:
“While we were in the bar I had one drink with this girl and we stood near the juke box and talked. After about a half hour I *365 decided to go and asked this same girl if she wanted to go with me. She said she did and we both went out in the parking lot where we talked for awhile. We both then got in my truck. I drove. I turned right out of the parking lot onto the Gale Rd. towards route 11B to go parking again. We had only gone a short distance down the road when she opened the passenger door of the truck and jumped out. I wasn’t going very fast and I kept going down the Gale Rd. After she jumped out I reached over and pulled the door shut. I did not go back to check on her. I just kept going * * *
“I have read this statement and want to add that when we left the Pleasant View Tavern it was my intention to go parking. The girl thought that I was going to take her home. When I turned the opposite way of where her house was, she asked me where we were going because her house was the other way. I told her we were going parking. She protested and said she didn’t want to go parking again. I said something to the affect that I would bring her home afterwards. That is when she jumped out of the truck.”
The “parking again” refers to the (corroborated) fact that defendant and decedent had earlier that evening left the bar for a time and then returned. The oral statements made to a B.C.I. investigator track the apparently inculpatory portions of the written, with the addition of a statement that the defendant thought that he was going about 20 miles per hour when the deceased jumped out and, in one instance, that he “let her out” or that “she got out” of the truck. The Grand Jury returned 1-55-84 charging the defendant with leaving the scene of an incident without reporting in violation of section 600 (subd 2, par a) of the Vehicle and Traffic Law.
The thrust of defendant’s motion to dismiss is threefold: (1) that actual knowledge of both the hit (accident or culpability and injury) and run (flight or continuance of trip) is the standard of proof, (2) that the Grand Jury was entitled, nay, must be instructed as to the law of scienter and its applicability on our facts, and (3) if only minimally, that there was no “accident” (within the meaning of Vehicle and Traffic Law, § 600).
The People respond in essence (1) that the degree of scienter required is a matter for the trier of fact and any jury charge thereto, (2) that Grand Jury charges regarding scienter may be required, if at all, only on a case-by-case basis (and ours is not one), and (3) that reading section 600 to the Grand Jury before and after the evidence was presented is sufficient to satisfy People v Calbud, Inc. (49 NY2d 389).
*366 The law regarding scienter in leaving-the-scene prosecutions has been clear in this State for years: the People must prove that the defendant knew or had reason to know (a) that there was an accident collision and (b) that injury/damage resulted (People v Hirsch, 241 App Div 712; People v Hakala, 270 App Div 612; People v Spiegelman, 19 AD2d 538; People v Petterson, 103 AD2d 811; People v Dorsey, 102 AD2d 123). People v Hager (124 Misc 2d 123) extends this concept on its facts to include whether or not a defendant left the scene knowingly or intentionally.
The defendant in Hager (supra) claimed that a form of amnesia prevented him from forming any sort of mental state vis-avis leaving the scenq and, as pointed out by the learned court, this was the central factual (and, as it turned out, legal) issue in the case. The court determined that, because the District Attorney had failed to instruct the Grand Jury as to the definitions and applicability of knowledge, intoxication and involuntariness to leaving the scene of the incident, the integrity of the proceeding was impaired (CPL 210.35, subd 5; 190.25, subd 6) and the indictment had to be dismissed.
Our facts, essentially embodied by defendant’s statements, are markedly different. There is no claim of amnesia, shock, intoxication or failure to perceive either the event that had just taken place or the fact that he left the scene. Rather, it is propounded that because the People merely charged section 600, as did the People in Hager (supra), the indictment must be dismissed. The status of the law in the Third Department, however, is to the contrary.
In another section 600 prosecution (People v Dorsey, supra) the Appellate Division recently held that People v Calbud, Inc. (supra) does not require that the definition of knowingly be read to the Grand Jury. Since nothing in our facts can be said to approach the situation in Hager, (supra), i.e., take this case outside the holding in Dorsey, the motion to dismiss on this ground will be denied.
There is, however, a more troublesome issue raised by the state of our facts (and tangentially by defendant’s motion papers). As was touched on supra, the only things legally sufficient to link defendant with the death of Jean Cox are his statements, specifically the portions set forth and/or referred to herein. There is no other evidence as to what transpired that night. That is to say, the only evidence before the Grand Jury of what actually happened consisted of defendant’s statements to the effect that: decedent jumped out of his truck when it was traveling slowly (20 miles per hour) after which he reached over, *367 closed the door and continued on his way without stopping (written), and that he had “let her out” or “she got out” (oral). There is absolutely nothing in the record to suggest that there was any ill will between defendant and the deceased, they in fact having left the bar and returned in good spirits once earlier that evening and then left together voluntarily shortly before Ms. Cox’ body was found.
Even considering the differences between defendant’s oral and written versions of what transpired that night, this court is of the opinion that the People failed to prove before the Grand Jury an element of the crime even more basic than knowledge, i.e., that there was culpability on his part or that he was in an “accident”.
It is not, and indeed, on such proof cannot be seriously contended by the People that the defendant was identifiably culpable in this tragedy. Their theory must then rest upon this death being the result of an “accident”.
It is submitted that a person jumping from a moving vehicle (the only scenario legally inferable from the evidence before the Grand Jury without engaging in sheer speculation) is not an accident within the meaning of section 600. In People v Berger (61 Misc 2d 120) it was held that a complainant striking a rear view mirror is not conduct falling within section 600’s culpability or accident prerequisite for identification and reporting. As was stated therein (p 121) “[h]ad the Legislature intended to require a motorist to stop and identify himself where any injury resulted, regardless of cause, it would have been a simple matter for the Legislature to employ appropriate language to such effect. Not having done so, we have no choice but to construe the statute as it is written” (see, also, People v Petterson, supra).
The single most important parallel between the Berger holding and the instant case, is that the injuries were most probably caused by an intentional act of the victim. In the case at bar there was not even any impact between car and victim (there was in Berger) or between car and other object.
There is a surprising dearth of cases dealing with this topic, particularly when one considers that the deceased certainly cannot be the first person in New York to have been seriously injured (or killed) as a result of exiting a moving vehicle. There is, however, a Nebraska case that holds precisely as this court does on facts apparently strikingly similar: “Where passenger voluntarily jumped from moving automobile and was injured in alighting without coming in contact with the automobile in any manner, the automobile was not involved in an accident within *368 the penal provisions of the statute requiring the driver of any vehicle involved in an accident resulting in injury or death to any person to stop the vehicle immediately. Neb. — Behrens v. State, 1 N.W.2d 289, 140 Neb. 671” (61A CJS, Motor Vehicles, § 675, p 551, n 34). The court reiterates at this point that there was absolutely no evidence that the deceased was involved in any contact with defendant’s (or anyone’s) vehicle, let alone that her injuries were thereby caused.
As noted supra, the only evidence of what finally transpired that night are defendant’s statements. While partially conflicting and likely less than credible, they were virtually the only evidence on which the People could rely to reconstruct what happened for the Grand Jury. What the statements relate, however, falls short of being the criminal conduct contemplated by section 600 (subd 2, par a) for the reasons set forth supra. What really happened that night in Brushton was known to only two people; now it is known to only one (who may be well within his constitutional rights to keep -such knowledge to himself especially if it differs from the statements he has already made).
Accordingly, the motion to dismiss indictment 1-55-84 is hereby granted. To quote from Hager (124 Misc 2d 123, 130, supra) “[t]he People are granted leave to re-present [or otherwise replead] this entire matter to another Grand Jury within 45 days. The defendant shall remain at liberty on his present bail status pending the action of the Grand Jury (CPL 210.45, subd 9). No sealing order shall issue pursuant to CPL 160.50 until the vacating of this securing order pursuant to CPL 210.45 (subd 9).”