THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY L. HOLMES, Appellant.

Third Department, June 19, 1986

APPEARANCES OF COUNSEL

*Thomas J. Snider* for appellant.

*Charles Gardner, District Attorney,* for respondent.

## OPINION OF THE COURT

LEVINE, J.

Defendant was indicted and charged with the crimes of burglary in the second degree and burglary in the third degree. His implication in the crimes was based solely upon circumstantial evidence. Late on the night of December 6, 1984, State Police officers responded to a call regarding a burglary at Robert Belvin's residence in St. Lawrence County. While investigating the subject premises, they noticed footprints in the newly fallen snow and followed them to Willard

Monroe's nearby house, finding items taken from the Belvin residence along the way. An individual described as a six-foot male with shoulder length hair, wearing light colored pants, a dark jacket and a hat was seen running from the Monroe house. Investigation revealed that that residence had also been forcibly entered. The officers initially pursued the individual and then followed his footprints for some 2½ hours leading to defendant's house, where he was apprehended. En route, they found a hat imprinted with the initials "D.H." adjacent to the tracks. Defendant was wearing light colored pants and a dark jacket, his hair was shoulder length, and his pants were covered with snow and ice up to the knees. After a jury trial, defendant was convicted of burglary as charged in connection with the two dwellings. This appeal ensued.

■ Defendant contends that the evidence at trial was legally insufficient to prove his guilt of the crimes charged beyond a reasonable doubt. We disagree. Since the conviction was based upon circumstantial evidence, "the conclusion of guilt must be consistent with and flow naturally from the proven facts, and * * * those facts viewed as a whole must exclude 'to a moral certainty' every conclusion other than guilt" *(People v Kennedy,* 47 NY2d 196, 202). The evidence presented at trial was sufficient to meet this standard, especially when viewed in a light most favorable to the People, as it must be on appeal since the People prevailed at trial *(supra,* at p 203).

Defendant's description fit that of the subject seen leaving the Monroe residence, and State Police Investigator Joseph Lightfoot testified that upon seeing the subject he thought him to be defendant, with whom he was familiar. Other officers testified that they followed the subject's circuitous but uninterrupted tracks for some 4½ miles through the woods and residential areas and were led to defendant's house. Lightfoot stated that defendant's hands were very cold, scratched and bleeding, his pants were torn in three places, and little pieces of wood were sticking out of his jacket. A forensic scientist with the State Police testified that the heel pattern of the boots defendant was wearing when apprehended compared in tread size and design to the heel marks found in the Monroe residence and the footprints left in the snow at the Belvin residence. An FBI forensic expert testified that feathers found in the Monroe house were consistent in type of species and randomness, size and color with feathers taken from the jacket worn by defendant. Although hairs taken from the hat found by the pursuing officers did not match defendant's,

evidence was introduced to the effect that the hat had been loaned by its owner to defendant's brother, Bernard, and the owner's and Bernard's hair matched the samples taken from the hat. The inference that defendant was the person who had burglarized the two residences was thus squarely grounded in the foregoing evidence and not upon any unsupported assumptions drawn from evidence equivocal at best *(see, People v Kennedy, supra,* p 202-203; *People v Dorsey,* 102 AD2d 123, 127).

■ We are similarly unpersuaded by defendant's claim that reversal is required because the prosecutor failed to turn over exculpatory evidence prior to the trial. Defendant's attorney was informed by Investigator Lightfoot at the close of the People's case that three other burglaries had been committed in the vicinity of the Belvin and Monroe residences and that feathers had been found in those houses. Defendant claims that the information was exculpatory because, if the feathers had been found to be consistent with those discovered at the Monroe residence, it would show that the individual seen leaving the Monroe residence did not flee to the City of Ogdensburg, where defendant was apprehended, but rather ran in the opposite direction where the additional burglaries occurred. The assumption underlying this argument is that, since no feathers were found at the Belvin residence, while feathers were found at the Monroe house and the three other burglarized premises, those burglaries must have occurred subsequent to the Monroe burglary.

The prosecution's failure to turn exculpatory evidence over to a defendant constitutes a violation of due process when it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense *(United States v Bagley,* 473 US —, —, 105 S Ct 3375, 3384). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the case *(supra,* p —, p 3384). The evidence here regarding the additional burglaries did not rise to that level of materiality. Investigator Lightfoot testified that those burglaries were reported 1½ weeks after defendant's arrest. No evidence was submitted regarding the date they were committed. Even if, as defendant contends, they took place on the same night, there was no proof whatsoever that they occurred subsequent to the Monroe burglary. The mere fact that the burglaries were committed and feathers found, without more, is not sufficient to undermine confidence in the finding of defendant's guilt. Moreover, although

there was no indication that the additional feathers recovered at the scene of the other burglaries had been destroyed or were unavailable, defendant did not request an adjournment in order to have them tested to show that they were similar to those found at the Monroe house (see, People v De Zimm, 102 AD2d 633, 636).

■ Defendant's assignment of error to County Court's refusal to give an expanded charge regarding interested witnesses is similarly unavailing. Defendant requested that the police officers who testified be singled out for the jury as interested witnesses, especially Investigator Lightfoot since he had previously been involved in an altercation with defendant and his brother. However, the jury was informed of that incident and a general instruction on interested witnesses, balanced as to the defense and the prosecution, was given (see, People v Bell, 38 NY2d 116, 120; People v Scott, 104 AD2d 667, 670). Furthermore, police officers are not, as a matter of law, interested witnesses (People v Simpson, 99 AD2d 555, 556; see, People v Gadsden, 80 AD2d 508), and Lightfoot's prior encounter with defendant was not sufficient to convert him to that status.

■ Defendant also contends that County Court should have required the prosecutor to disqualify himself since he had represented defendant on a prior unrelated charge. However, defendant consented to the prosecutor's participation in the case after the prior representation was made known, and he has shown neither actual prejudice nor a substantial risk thereof (see, Matter of Schumer v Holtzman, 60 NY2d 46, 55; People v Blim, 98 AD2d 944, 945, revd on other grounds 63 NY2d 718).

Defendant's remaining contentions are equally without merit or not preserved for review.

MAHONEY, P. J., KANE and CASEY, JJ., concur.

Judgment affirmed.