THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARL T. THORNTON, Appellant.

Third Department, July 16, 1987

APPEARANCES OF COUNSEL

*William R. Shaw* for appellant.

*Benjamin J. Bucko, District Attorney (William A. Lange, Jr.,* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

Defendant was indicted for the crimes of operating a motor vehicle with a blood alcohol level of at least .10%, as a felony (Vehicle and Traffic Law § 1192 [2]), and operating a motor vehicle while intoxicated, as a felony (Vehicle and Traffic Law § 1192 [3]), and for the offense of operating a motor vehicle while his license was revoked, a violation (Vehicle and Traffic Law § 511 [2]). Following a jury trial, he was found guilty on all three counts and was sentenced to concurrent indeterminate terms of 1⅓ to 4 years' imprisonment on the felony charges and to a conditional discharge on the violation.

Defendant's contention on appeal, that the evidence at trial was legally insufficient to establish beyond a reasonable doubt that he operated a motor vehicle in violation of Vehicle and Traffic Law § 1192 (2) and (3) and § 511 (2), is without merit. State Troopers Robert M. Lishansky and Patrick J.

Smith testified that while on patrol in Tompkins County, they observed a vehicle facing north in a southbound lane of Route 366, parked with three wheels on the road. According to the troopers, defendant was seated behind the wheel of the vehicle, but moved to the center of the front seat immediately after the patrol car pulled up. Lishansky testified that when he exited the patrol car and approached the vehicle, the lights were on and the engine was running, but the engine was thereafter turned off and he then observed defendant pass something to the passenger in the front seat prior to moving to the middle of the seat. The keys to the vehicle were later found on the floor on the passenger side of the car. Smith followed Lishansky out of the patrol car and recalled that the motor of the other vehicle was off by the time he reached the rear of the vehicle. He did observe that the vehicle's lights were on.

In addition to the foregoing, there was testimony from the sole other occupant of the vehicle, Dennis Seaman. Seaman had initially stated at the scene that he had been driving the car but switched seats with defendant so that defendant could talk to three teen-agers who were walking along the side of Route 366. However, he immediately recanted his story and at trial testified that defendant had driven the car to the point where it was stopped, pulled over to talk to the teen-agers, and upon noticing the patrol car, turned the car's engine off, threw the keys towards the passenger seat and edged away from the wheel. From all of the foregoing, the jury could properly find beyond a reasonable doubt (1) that defendant had driven the car to the point at which it was stopped and thus operated it, and (2) that defendant, positioned at the wheel of the car while it was parked on Route 366 with the engine running and lights on, was using the mechanism of the vehicle for the purpose of putting it in motion if he had not been interrupted by the troopers. This is sufficient to establish operation of the vehicle within the meaning of Vehicle and Traffic Law § 1192 (2) and (3) (see, People v Marriott, 37 AD2d 868; Matter of Prudhomme v Hults, 27 AD2d 234, 236-237).

The foregoing evidence of defendant's operation of the vehicle was direct and not circumstantial, in that it consisted of Seaman's personal observations of defendant driving the car to the place where it was parked and Lishansky's similar observations of the vehicle and defendant's conduct thereafter. Therefore, contrary to defendant's contentions, the case is not governed by the circumstantial evidence standard of proof

either for purposes of submitting it to the jury or appellate review *(see, People v Barnes,* 50 NY2d 375, 380).

Defendant's alternative argument for reversal is that he was denied a fair trial because of the prosecution's failure to supply him with exculpatory evidence and information as required under *Brady v Maryland* (373 US 83). The *Brady* material defendant sought before trial was (1) all impeaching evidence with respect to Seaman, the other occupant of the car, such as his initial admission to the troopers that he was the driver, the results of sobriety tests which were administered to him and his prior criminal record, and (2) the names and addresses of the three teen-agers he and Seaman encountered and spoke to when they stopped on Route 366. As to data sought by the defense to impeach Seaman's credibility as a witness, much of it was known by defendant at the inception of the case and the remainder was furnished by the prosecution as *Rosario* material immediately before the trial began. These materials were used effectively by the defense during the trial and there has been no showing whatsoever that any earlier disclosure would have affected the outcome of the trial *(see, People v Holmes,* 117 AD2d 480, 483, *lv denied* 68 NY2d 757).

As to disclosure of the identities and addresses of the three teen-age eyewitnesses, the record establishes that, although the troopers obtained this information and spoke to the teen-agers at the scene, the material was not turned over to the prosecution initially and was inexplicably lost or misplaced by the police. In responding to the motion for disclosure, the prosecution informed defendant that the information was not in its possession at that time, but that an endeavor would be made to obtain it. Whatever the obligation of a prosecutor to furnish the names of witnesses upon a proper showing of need therefor by the defense *(see, People v Miller,* 106 AD2d 787, 788), that duty may not be extended to the furnishing of such information when it is neither known by nor available to the prosecution, as was the case here. Therefore, the issue distills to the significance under *Brady* of the loss of the teen-agers' names and addresses by the police, thereby effectively eliminating defendant's ready access to this potential source of eyewitness testimony. We conclude that this does not require reversal in the instant case.

There is no per se constitutional right of an accused to access to evidence once in the hands of law enforcement authorities *(see, California v Trombetta,* 467 US 479, 488;

*United States v Valenzuela-Bernal,* 458 US 858, 866-867, 872-873; *United States v Augenblick,* 393 US 348, 352-353, 356). The record does not even suggest, let alone establish, that the troopers' loss of identifying information as to these witnesses was anything but inadvertent. Moreover, the misplacement of this information did not render that source of potential evidence totally beyond reach of defendant, who could have sought to locate the witnesses through his own investigative resources once put on notice, months before the trial, that their names and addresses were not in the prosecution's files *(see, California v Trombetta, supra,* at 489). Given these circumstances, we have concluded that, under *United States v Valenzuela-Bernal (supra),* defendant's objection is unavailing. There, the defendant was charged with criminally transporting illegal aliens within the United States. Two of the three such illegal aliens arrested with the defendant were deported shortly thereafter. Similar to the issue raised here, the defendant's claim in *Valenzuela-Bernal* was that the government's denial of access to eyewitnesses to the offense violated his constitutional rights to potential exculpatory evidence. Acknowledging the practical difficulties facing the defense, which had not been afforded a reasonable opportunity even to have interviewed such witnesses before they became inaccessible, the United States Supreme Court nevertheless held that a criminal defendant in such circumstances must at least make a "plausible showing that the testimony of the deported witnesses would have been *material and favorable* to his defense" *(United States v Valenzuela-Bernal, supra,* at 873; emphasis supplied). Here also, defendant made no such showing, nor did he avail himself of the opportunity to do so through interrogation of the troopers at a preliminary hearing *(see, United States v Augenblick, supra,* at 355) or cross-examining them at the trial, concerning the results of the interviews of the witnesses at the crime scene. In short, defendant's claim that disclosure of the names and addresses of these witnesses would have led to exculpatory evidence is entirely speculative and, therefore, is not a basis for reversal *(see, People v Rose,* 122 AD2d 484, 486; *People v Briggs,* 81 AD2d 1017).

■ We likewise reject defendant's final claim that his sentence was harsh and excessive. Defendant's lengthy criminal record includes eight convictions related to drinking and driving, the instant conviction being his second as a felony. Defendant has also been arrested for driving while his license

was suspended or revoked on five separate occasions. Given the foregoing, defendant's sentence to concurrent 1⅓ to 4-year terms of imprisonment was entirely appropriate.

MAHONEY, P. J., WEISS, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment affirmed.