**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michelle C. OLSON, Defendant and Appellant.**

**Cr. No. 986.**

Supreme Court of North Dakota.

Oct. 23, 1984.

Keith Reisenauer, Asst. State's Atty., Fargo, for plaintiff and appellee State of N.D.

William Kirschner, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Michelle C. Olson appealed from the criminal judgment entered by the county court, Cass County, on January 9, 1984, convicting Olson of failing to immediately stop after colliding with an unattended vehicle and notify the operator or owner of the accident. We affirm.

During the evening of September 30, 1983, Olson was driving through Casselton when her automobile struck a parked vehicle. At trial there was conflicting evidence presented as to whether or not Olson was fully conscious after the accident. Evidence showed that Olson's vehicle momentarily stopped at the scene of the accident before continuing on a normal course for approximately five to seven blocks to its resting place. Olson testified that she was knocked out by the impact and that she did not remember anything after the accident

until she was in the ambulance. A passenger in Olson's vehicle testified that upon telling Olson that he was going to call the police and report the accident she replied, "No, no, no." She then drove away. When Olson finally stopped, witnesses observed her to be awake but speaking incoherently. Testimony by an ambulance attendant indicated that after Olson's vehicle finally stopped Olson appeared to be in shock and that she lapsed in and out of consciousness. On the way to the hospital Olson continued to lapse in and out of consciousness.

On January 9, 1984, Olson was tried before a jury for failing to immediately stop and notify the operator of an unattended vehicle of the name of the driver and owner, in violation of Section 39–08–07, N.D. C.C. The jury returned a verdict of guilty.

On appeal, Olson argues that the trial judge committed reversible error by not giving a jury instruction that required the State to prove that she acted consciously in moving her car and failing to stop and notify the owner of the other vehicle. Olson agrees that Section 39–08–07 is a strict-liability statute. Olson, however, contends that strict liability should apply only to unlawful acts which are voluntarily, intentionally, or negligently done and not to involuntary or unconscious acts.

I

The State contends that Section 39–08–07, N.D.C.C., is a strict-liability statute requiring no proof of intent, knowledge, willfulness, or negligence for conviction. Section 39–08–07 provides, in pertinent part:

"The driver of any vehicle which collides with any vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of the vehicle of the name and address, as well as the name of the motor vehicle insurance policy carrier, of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in the vehicle struck a written notice giving the [same information as above, plus] a statement of the circumstances of the collision. Any person violating this section is guilty of a class A misdemeanor."

Whether an offense is punishable without proof of intent, knowledge, willfulness, or negligence is a question of legislative intent to be determined by the language of the statute in connection with its manifest purpose and design. *State v. Rippley*, 319 N.W.2d 129 (N.D.1982). Section 39–08–07 does not contain language requiring culpability. Our review of the legislative history behind Section 39–08–07 indicates that the Legislature enacted it without a culpability requirement. See 1955 N.D.Sess.Laws, Ch. 253, § 4. The legislative committee reports from 1953 to 1979 fail to make any mention of a culpability requirement. Section 39–08–07 has been substantively changed only twice since its enactment in 1955. In 1975 a penalty provision was added and in 1979 additional information was required to be given to the owner of the unattended vehicle. See 1975 N.D.Sess.Laws, Ch. 339, § 19; 1979 N.D. Sess.Laws, Ch. 421, § 2.

Section 12.1–02–02(2), N.D.C.C., provides "that if a statute defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is that one commit the offense willfully." *State v. Bohl*, 317 N.W.2d 790, 793 (N.D.1982). That culpability requirement, however, applies only to the offenses or crimes described in Title 12.1, N.D.C.C., and therefore does not apply to Section 39–08–07, N.D.C.C. City of *Dickinson v. Mueller*, 261 N.W.2d 787 (N.D.1977). Because Section 39–08–07 includes no culpability requirement the violation is a strict-liability offense, punishable without regard to intent, knowledge, willfulness, or negligence. *State v. Bohl, supra; State v. Carpenter*, 301 N.W.2d 106 (N.D.1980); *State v. North Dakota Ed. Ass'n*, 262 N.W.2d 731 (N.D.1978). Strict-liability statutes in criminal law do not invariably violate constitutional requirements. "Thus, public welfare [statutes], i.e., regulatory measures enacted by the

legislature under the exercise of the police power, which dispense with mental culpability requirements, have generally been upheld if the accused is in a position to prevent the offense with no more care than society might reasonably expect and the penalty provided is small." *State v. Carpenter, supra,* 301 N.W.2d at 111, citing *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Although we agree that Section 39–08–07 is a strict-liability statute, one cannot be guilty of failing to conform to the statutory requirement where he or she is unconscious or lacks the mental or physical ability to perform the required act.

It is a general rule of criminal law that a person cannot be held criminally responsible for acts committed, or for failure to perform acts while he is unconscious. 22 C.J.S. *Criminal Law* § 55, p. 194. See, e.g., *People v. Hager,* 124 Misc.2d 123, 476 N.Y.S.2d 442 (1984). Under strict-liability statutes one will not be excused because he intended no wrong, but that rule applies only to unlawful acts which are voluntarily done, and involuntary acts are not criminal. 22 C.J.S. *Criminal Law* § 30, p. 106. See *Minneapolis v. Altimus,* 306 Minn. 462, 238 N.W.2d 851 (1976); *State v. Kremer,* 262 Minn. 190, 114 N.W.2d 88 (1962); *People v. Shaughnessy,* 66 Misc.2d 19, 319 N.Y.S.2d 626 (1971).

In the present case, although testimony indicated that Olson was in shock and semi-conscious after the accident, evidence also clearly demonstrated that Olson drove her car from five to seven blocks away from the scene of the accident before stopping. If Olson voluntarily left the scene of the accident, or was negligent in failing to stop and give the required notice, she would be guilty under Section 39–08–07. Conversely, if Olson was unconscious or in such a mental or physical condition that she involuntarily drove away from the accident, she could not be held guilty of violation of Section 39–08–07. Clearly, in the latter situation, the policy reasons for imposing strict liability would not be furthered by holding Olson guilty.

But we cannot say that consciousness is an element that the State must prove in a strict-liability case. Therefore, a trial judge does not have to include a conscious-action type instruction in every strict-liability case. However, where a trial judge is presented with evidence of unconsciousness and a proper request is made by counsel for an instruction, the judge may instruct the jury on the conscious-action issue.

## II

For purposes of this appeal we assume, without deciding, that an instruction similar to that which Olson now urges should have been given. We note that at trial the judge deleted from her proposed instructions an instruction on intent,[1] because after urging by the State she determined that Section 39–08–07 is a strict-liability statute requiring no mens rea. Defense counsel requested that the court give a jury instruction as to conscious action.[2] How-

1. The intent instruction read:
   "The criminal intent necessary for the commission of a particular offense must exist at the time of the act. The intent or purpose with which an act is done is a mental process and is rarely, if ever, susceptible to proof by direct evidence. Intent may be inferred from the outward manifestations, the words or acts, or the facts and circumstances surrounding the event."

2. The following is the discussion between counsel and the trial judge in chambers as to jury instructions:
   "MR. KIRSCHNER [for defendant]: For the record I will state that I have no objection to

any of the jury instructions because I've read them all.
   "THE COURT: You've had sufficient time to review them?
   "MR. KIRSCHNER: I have had sufficient time to review them....

   "I believe that a conscious action is required and that somehow or other the jury instructions have to reflect a conscious action because an action done by a person who's not consciously acting can hardly be a type of action that we can make criminal.

ever, counsel did not proffer a specific instruction on conscious action but instead requested the court to compose such an instruction. The court denied counsel's request. As a result, the court gave no intent or conscious-action instruction. The question presented, then, is whether or not counsel for Olson was obliged to submit a written jury instruction in order to have preserved Olson's objection for appeal.

Rule 30(b), N.D.R.Crim.P., provides that "any party may file written requests that the court instruct the jury on the law as set forth in the requests." Generally, each litigant in a case has the right to request instructions upon the issues of the case. Although the trial court may be required to present general jury instructions concerning the issues without request from counsel, "attorneys have the professional responsibility to request or object to specific instructions of points of law resulting from testimony or on developments during trial, Rule 30, N.D.R.Crim.P." *State v. Allery,* 322 N.W.2d 228, 232, n. 3 (N.D.1982).

■■■ If a defendant desires more comprehensive instructions on any phase of the case, he must submit written instructions with the request that they be given. *State v. Bowe,* 57 N.D. 89, 220 N.W. 843 (1928). If a party fails to make such a request he cannot predicate error upon omissions in the charge given. *Bowe, supra;* see also *Casper v. Spaulding,* 78 Idaho 282, 301 P.2d 1097 (1956); *State, Road Comm'n v. Kendell,* 20 Utah 2d 356, 438 P.2d 178 (1968); *Salt Lake & U.R. Co. v. Schramm,* 56 Utah 53, 189 P. 90 (1920). See, generally, 75 Am.Jur.2d, *Trial,* § 577, p. 562. Counsel will not be excused for failing to comply with a rule to present requested instructions in writing merely because the

trial judge indicates in advance that he will not give the instruction requested. 75 Am. Jur.2d, *Trial,* § 580, p. 565; *Gaspar v. Georgia Pacific Corp.,* 248 Cal.App.2d 248, 56 Cal.Rptr. 243 (1967). The reason for the requirement for written instructions is that a trial judge must be allowed an opportunity to examine the substance of the requested instruction in order to facilitate a proper ruling on that request. The desired result is a ruling by the trial judge that will allow the instructions to fully and accurately inform the jury of the applicable law. Additionally, by requiring requested jury instructions to be in proper form, we, as a court of review, will be able to determine from the record the correctness of the trial court's ruling.

■■■ Here, counsel failed to tender a written jury instruction on "conscious action." In fact, counsel attempted to shift his duty of drafting a specific instruction on conscious action to the judge. We hold that it was counsel's duty to draft a specific instruction on conscious action and to submit it to the trial judge. Because Olson did not submit a written jury instruction she may not predicate error upon the trial court's refusal to give the conscious-action instruction unless the trial court committed reversible error by so ruling.

### III

■■■ In determining whether or not a trial court has committed error which warrants a new trial, "[w]e must consider the entire record and the probable effect of the actions alleged to be error in light of all the evidence in order to determine whether substantial rights were affected." *State v. Allen,* 237 N.W.2d 154, 162 (N.D.1975). Thus we look to the relation of the error to the result of the trial. The error here does

---

· "Now if it's not the intent instruction as drawn by the Court, perhaps we can sit here and try and draw an instruction relative to unconsciousness or knowledge with which a person acts.

"I sat, last night I sat up for many hours trying to think of such an instruction and was not able to conclude one myself.

·    ·    ·    ·    ·

"THE COURT: All right. The Court is going to delete the intent instruction.

·    ·    ·    ·    ·

"MR. KIRSCHNER: Do I understand it is the Court's ruling then that there is no mental element or consciousness that is required to perform the act?

"THE COURT: That's correct.

"MR. KIRSCHNER: Okay. So the requesting of the instruction, to instruct as to that would be—

"THE COURT: —Denied.

"MR. KIRSCHNER: Okay."

not involve Olson's constitutional rights, so it must appear that prejudice occurred, that substantial injury resulted to her case, and that a different decision probably would have resulted absent the error before we can reverse the jury's verdict. *State v. Allen, supra,* 237 N.W.2d at 162, citing *State v. Marmon,* 154 N.W.2d 55, 64 (N.D. 1967). After reviewing the record we conclude that even if Olson was prejudiced by the trial judge's failure to instruct on the conscious-action issue, counsel's failure to make a proper request is controlling. If the trial judge had so instructed we cannot say that the jury would have found Olson not guilty. Although an instruction on conscious action was not given, counsel was free to argue and did argue to the jury that Olson was unconscious after the accident and could not conform to the requirements of the law. We believe that the issue of conscious action was presented fairly to the jury. Finally, we conclude that there was sufficient evidence for the trier of fact to conclude that Olson was conscious just after the accident and that she knew what she was doing when she failed to stop and give the statutorily required notice.

For the reasons stated in this opinion the verdict of the jury and the judgment of conviction of the county court are affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.