**CITY OF DICKINSON, Plaintiff and Appellee,**

v.

**Gloria GRESZ, Defendant and Appellant.**

**Cr. No. 890109.**

Supreme Court of North Dakota.

Dec. 20, 1989.

Diane F. Melbye (argued), Dickinson, for defendant and appellant.

Ficek Law Office, Dickinson, for plaintiff and appellee; argued by Vince H. Ficek, City Atty.

ERICKSTAD, Chief Justice.

Gloria Gresz was convicted by a jury in Stark County Court of retail theft-shoplifting in violation of Dickinson City Code Section 22–21. She appeals from the judgment of conviction. We affirm.

On July 1, 1988, Jerry Bertsch, associate manager of Woolworths, observed Gloria Gresz in the jewelry department of the store. Bertsch observed Gresz with some type of plastic bracelets in her hand. Gresz walked behind the jewelry counter, and then came back out, whereupon Bertsch noticed that the bracelets were no longer in her hand. Bertsch followed Gresz to an area of the store which contained figurines. Bertsch met Shirley Pavlicek, a sales clerk, and told her about Gresz's suspicious actions. Bertsch and Pavlicek stood behind a counter, approximately 15 feet from where Gresz was standing. With a clear view of the area, Bertsch and Pavlicek observed Gresz picking up and putting down items in the figu-

rine area for approximately 15 to 20 minutes. They observed Gresz pick up a bird figurine, squat down in a bent position, and place the figurine in a shopping bag that she was carrying. Bertsch testified that he then followed Gresz as she went out the east door of the store. Bertsch approached Gresz outside the store and stated that he was doing a security check.

The police were called and Gresz was subsequently charged with retail theft-shoplifting, in violation of Dickinson City Code Section 22–21. The pertinent part of that section follows:

"(a) *Presumption.* Any person concealing upon his person or among his belongings, or causing to be concealed upon the person or among the belongings of another, unpurchased merchandise displayed, held, offered or stored for sale in a retail mercantile establishment and removing it to a point beyond the last station for receiving payments in that retail mercantile establishment shall be prima facie presumed to have so concealed such merchandise with the intention of permanently depriving the merchant of possession or of the full retail value of such merchandise.

\* \* \* \* \* \*

"(d) *'Shoplifting' defined; penalty.* Theft of unpurchased merchandise displayed, held, offered or stored for sale in a mercantile establishment from that establishment when open for business is 'shoplifting' for which the offender may be assessed a penalty upon conviction not exceeding one thousand dollars, imprisonment for thirty days, or both such fine and imprisonment. (Source: North Dakota Century Code, sections 51–21–01, 51–21–02, 51–21–03 and 40–05–06). (Ord. No. 867, Section 1.)"

1. Upon conviction, Gresz was sentenced as follows:

"The Defendant is hereby sentenced to serve 15 days at the Southwest Multi–County Correction Center, Dickinson, North Dakota. Said 15 days shall be suspended for a period of one year upon the following terms and conditions:

"1. The Defendant shall violate no state, federal or municipal laws or ordinances except those classified as infractions under law.

A jury trial was held on March 17, 1989, whereupon Gresz was convicted.[1]

On appeal Gresz asserts two issues:

I. Did the City of Dickinson exceed the authority granted to it by the State when it passed a shoplifting ordinance which created presumption based upon civil law and defined the theft offense differently than the definition provided by the authorizing statute?

II. Whether the jury instruction regarding the presumption of intent when read in the context of the jury charge as a whole is unconstitutional.

I.

Article VII, section I, of the North Dakota Constitution directs that "the legislative assembly shall provide by general law for the organization of municipal corporations." This Court has stated that cities are agencies of the state and have only the powers expressly conferred upon them by the legislative branch of government or such as may be necessarily implied from the powers expressly granted. *Roeders v. City of Washburn*, 298 N.W.2d 779 (N.D. 1980); *Dakota Land Company v. City of Fargo*, 224 N.W.2d 810 (N.D.1974); *Parker Hotel Company v. City of Grand Forks*, 177 N.W.2d 764 (N.D.1970). Thus, it must be determined whether or not the state has statutorily granted the city the power to enact an ordinance defining shoplifting and providing for punishment for the commission of shoplifting.

■ Section 40–05–01(1), N.D.C.C., in relevant part, provides the municipality with the general power of enacting ordinances as follows:

"2. The Defendant is hereby ordered to pay a fine in the amount of $250.00, which shall be paid in full by January 17, 1990.

"3. The Defendant is hereby ordered to submit herself to the Police Department of the City of Dickinson, North Dakota, for the purposes of fingerprinting, within 30 days of the date hereof."

"*Powers of all municipalities.* The governing body of a municipality shall have the power:

"1. Ordinances. To enact or adopt all such ordinances, resolutions, and regulations, not repugnant to the constitution and laws of this state, as may be proper and necessary to carry into effect the powers granted to such municipality or as the general welfare of the municipality may require, and to repeal, alter, or amend the same."

Section 40-05-02, N.D.C.C., provides additional specific powers to the city. That section, in relevant part, reads:

"*Additional powers of city council and board of city commissioners.* The city council in a city operating under the council form of government and the board of city commissioners in a city operating under the commission system of government, in addition to the powers possessed by all municipalities, shall have power:

\* \* ⚹ \* \* \*

"25. Theft. To prohibit by ordinance and prescribe the punishment for the commission of theft, as defined by chapter 12.1-23, within the jurisdiction of the city."

Gresz contends that the city exceeded the authority granted to it by the state under section 40-05-02, N.D.C.C., when it adopted a shoplifting ordinance which defined the offense differently from the defi-

**2.** Section 12.1-23-02, N.D.C.C., reads:
"A person is guilty of theft if he:
1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;
2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; or
3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof."

**3.** Section 40-05-06(3), N.D.C.C., reads:
"*40-05-06. City fines and penalties limited.*
\* \* \* \* \* \*
3. For every violation of a city ordinance prohibiting shoplifting, vandalism, criminal

nition provided by the authorizing statute. Gresz contends that section 40-05-02(25), N.D.C.C., requires a city to limit its theft ordinances to the elements described in section 12.1-23-02, N.D.C.C.[2] Specifically, she contends that the city erred in including the presumption of intent in its shoplifting ordinance.

The city contends that shoplifting is a distinguishable crime from that of other thefts, and therefore, need not be defined the same. It asserts that the general power authorization in section 40-05-01(1), N.D.C.C., along with the specific penalty authorization in section 40-05-06, N.D.C.C.,[3] empowers the city to enact a separate shoplifting ordinance such as section 22-21 of the Dickinson City Code.

■ In passing upon the validity of such ordinances, the courts will not declare them invalid unless such ordinances are clearly arbitrary, unreasonable, and without relation to public health, safety, morals, or public welfare. *Tayloe v. City of Wahpeton,* 62 N.W.2d 31 (N.D.1953); *See also, Soderfelt v. City of Drayton,* 79 N.D. 742, 59 N.W.2d 502 (1953).

Other jurisdictions have held similar presumptions in shoplifting statutes to be constitutional. The Superior Court of Pennsylvania upheld such a statute in *Commonwealth v. Martin,* 300 Pa.Super. 497, 446 A.2d 965 (1982).[4] In analyzing the constitutionality of such a statute the court said:

mischief, or malicious mischief, the penalty may not exceed a fine of one thousand dollars, imprisonment for thirty days, or both such fine and imprisonment."

**4.** 18 Pa.C.S. Section 3929(c) reads as follows:
"(c) Presumptions.—Any person intentionally concealing unpurchased property of any store or other mercantile establishment, either on the premises or outside the premises of such store, shall be prima facie presumed to have so concealed such property with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof within the meaning of subsection (a), and the finding of such unpurchased property concealed, upon the person or among the belongings of such person, shall be prima facie evidence of intentional concealment, and, if such person conceals, or causes to be

"This statutory presumption is an evidentiary device which may be available to assist the Commonwealth in proving an element of the offense beyond a reasonable doubt. It arises only when the prosecution establishes the existence of facts upon which the presumption is based. The fact upon which the instant presumption is based is concealment of the unpurchased merchandise.

"Such a presumption is a presumption of fact or an inference, and not to be confused with an irrebuttable presumption....

"In evaluating the need for and propriety of a standardized inference we should weigh two distinct factors: (1) whether, in light of present day experience, the proven facts bear sufficient relationship to the fact to be inferred; and (2) whether the rational connection inherent in the inference is of such a nature that standardization is desirable.

"Applying this test to the present statutory presumption we find that the statute passes constitutional muster. If a person conceals merchandise either in a store or outside of it, without first having paid for it, it reasonably follows that he intends to deprive the merchant of the item(s)....

"As intent to deprive is an essential element of the crime of retail theft, the inference must follow beyond a reason-able doubt from its factual basis. We have no difficulty in concluding, especially in light of the previous discussion, that the inference here in question satisfies the reasonable doubt standard." [Cites and footnote omitted.]

*Martin*, 446 A.2d at 968–69. Thus, according to the Pennsylvania Court, a rebuttable presumption relating to an element of the crime is permissible.

The Appellate Division of the Superior Court of New Jersey also upheld such a statute in *State v. Fitzmaurice*, 126 N.J. Super. 361, 314 A.2d 606 (1974).[5]

The court said:

"It is clear that the use of a statutory presumption in a criminal statute is proper so long as there is a rational connection between the fact proved and the ultimate fact presumed. *Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241 [1244], 87 L.Ed. 1519 (1943); *United States v. Romano*, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

"A rational connection exists here, where the statutory scheme permits a *prima facie* inference of shoplifting to flow from proof of willful concealment of merchandise and, further, which permits a *prima facie* inference of willful concealment to flow from a finding that merchandise has been concealed.

---

concealed, such unpurchased property, upon the person or among the belongings of another, such fact shall also be prima facie evidence of intentional concealment on the part of the person so concealing such property."

**5.** The New Jersey shoplifting statute, N.J.S.A. 2A:170–99, in 1974, in relevant part, read as follows:

"Any person willfully concealing unpurchased merchandise of any store or other retail mercantile establishment, either on the premises or outside the premises of such store or other retail mercantile establishment, shall be prima facie presumed to have so concealed such merchandise with the intention of converting the same to his own use without paying the purchase price thereof within the meaning of section 1 of this act, and the finding of such merchandise concealed upon the person or among the belongings of such person shall be prima facie evidence of willful concealment."

N.J.S.A. 2A:170–99 was subsequently repealed and recodified as N.J.S.A. 2C:20–11. That section, in relevant part, now reads:

"*d. Presumptions.* Any person purposely concealing unpurchased merchandise of any store or other retail mercantile establishment, either on the premises or outside the premises of such store or other retail mercantile establishment, shall be prima facie presumed to have so concealed such merchandise with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof, and the finding of such merchandise concealed upon the person or among the belongings of such person shall be prima facie evidence of purposeful concealment; and if such person conceals, or causes to be concealed, such merchandise upon the person or among the belongings of another, the finding of the same shall also be prima facie evidence of willful concealment on the part of the person so concealing such merchandise."

"Defendant further contends that a deprivation of due process exists because the statute eliminates the necessity of proof of an intent to commit the crime. The Legislature may make the doing of a prohibited act a crime, regardless of criminal purpose or even knowledge of the illegal character of the act....

"Nor does the statute violate defendant's presumption of innocence, as he argues, by shifting the burden of proof to him. The statutory inference simply creates *prima facie* evidence of guilt. The statute permits, but does not compel, a finding of guilt upon proof of certain basic facts.

"We accordingly hold that the statute is constitutional and does not deprive defendant of due process of law. [Cites omitted.]"

*Fitzmaurice*, 314 A.2d at 607–08.

These approaches are consistent with the view of the Supreme Court of the United States as set out in *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), and its progeny. The Court has said:

"Inferences and presumptions are a staple of our adversary system of fact-finding.... The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.

"The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. In that situation the basic fact may constitute *prima facie* evidence of the elemental fact.... Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." [Cites omitted.]

*County Court of Ulster Cty. v. Allen*, 442 U.S. 140, 156–57, 99 S.Ct. 2213, 2224–225, 60 L.Ed.2d 777, 791–92 (1979).

■  The legislature also has the authority to enact strict liability offenses which require no intent. *See* section 39–08–07, N.D.C.C. (hit and run); section 39–08–20, N.D.C.C. (driving without liability insurance); section 6–08–16, N.D.C.C. (insufficient funds). "Strict liability statutes in criminal law do not invariably violate constitutional requirements." *State v. Olson*, 356 N.W.2d 110, 112 (N.D.1984).

■  Section 12.1–01–05, N.D.C.C., says that "[n]o offense defined in this title or elsewhere by law shall be superseded by any city or county ordinance ... and all such offense definitions shall have full force and effect within the territorial limits and other jurisdiction of home rule cities or counties." Shoplifting is "theft" as defined under section 12.1–23–02, N.D.C.C. Therefore, the Dickinson City Ordinance must not attempt to prohibit any conduct other than that prohibited by the state statute. *See City of Grand Forks v. Cameron*, 435 N.W.2d 700 (N.D.1989). The city ordinance does not define an offense different from that in the state statute, it merely provides an evidentiary device for proving the element of intent. As the ordinance does not provide for a mandatory presumption, it is an acceptable means of aiding the evidentiary process.[6]

---

6. Although not referred to us in brief or oral argument, it appears to us that what we have said is consistent with section 12.1–01–03(4), N.D.C.C., which reads:

"*Proof and presumptions.*

■ We conclude that the city has the authority under section 40–05–01, N.D.C.C., to enact the shoplifting ordinance; that the ordinance does not supersede state law; and that the ordinance is not repugnant to either the federal or state constitutions.

## II.

■ Gresz next contends that the instructions given to the jury, taken as a whole, were unconstitutional. The jury instructions were in relevant part as follows:

### "ESSENTIAL ELEMENTS OF OFFENSE

"Any person concealing upon his or her person or among his belongings, or causing to be concealed upon his or her person or among the belongings of another, unpurchased merchandise displayed, held, offered or stored for sale in a retail merchantile [mercantile] establishment and removing it to a point beyond the last station for receiving payments in that retail merchantile [mercantile] establishment shall be presumed to have so concealed such merchandise with the intention of permanently depriving the merchant of possession or of the full retail value of such merchandise.

### "DEFINITIONS

"For the purposes of this offense, the following words and phrases shall have the meanings respectively given to them:

"CONCEALED—an item which, even though there is some notice of its presence, is itself not visible through ordinary observation.

&ast; &ast; &ast; &ast; &ast; &ast;

"A person who knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, unpurchased merchandise displayed, held, offered or stored for sale in

&ast; &ast; &ast; &ast; &ast; &ast;

"4. When a statute establishes a presumption, it has the following consequences:

a. If there is sufficient evidence of the facts which gave rise to the presumption, the presumed fact is deemed sufficiently proved to warrant submission of the issue to a jury unless the court is satisfied that the evidence as a whole clearly negates the presumed fact.

a merchantile [mercantile] establishment from that establishment when open for business is guilty of shoplifting.

"The burden of proof resting upon the City is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:

"1. That on or about July 1, 1988, in the City of Dickinson, in Stark County, North Dakota, the Defendant, Gloria J. Gresz, knowingly took or exercised unauthorized control of a certain unpurchased item, namely one ceramic bird valued at $4.00 while placing said bird in her plastic grocery bag, and thereafter removing this item to a point beyond the last station for receiving payments in that retail merchantile [mercantile] establishment with the intention of permanently depriving the merchant of possession or of the full retail value of such item.

"2. That said property was the property of the merchantile [mercantile] establishment, namely Woolworths.

"3. That the Defendant acted with intent to deprive said owner of said property.

### "PRESUMPTION

"A presumption is an inference of a fact not certainly known, which the law expressly directs to be drawn from particular facts or circumstances in the case. It substitutes for evidence and governs you in finding the facts unless it is disproved (meaning that the contrary has been established by credible evidence or if, from the evidence, you have a reasonable doubt as to the existence of the presumed fact), in which event the presumption is rebutted and ceases to operate. Although the evidence as a whole must establish the presumed fact beyond

b. In submitting the issue of the existence of the presumed fact to a jury, the court shall charge that, although the evidence as a whole must establish the presumed fact beyond a reasonable doubt, the jury may arrive at that judgment on the basis of the presumption alone, since the law regards the facts giving rise to the presumption as strong evidence of the fact presumed."

a reasonable doubt, you may so find on the basis of the presumption alone, because the law regards the facts giving rise to the presumption as strong evidence of the fact presumed."

Gresz contends that the instructions had the primary effect of shifting to her the burden of going forward with the evidence and that the presumption conflicted with her presumption of innocence which the law extends to every element of a crime.

This Court has summarized its approach to reviewing jury instructions as follows:

"'In determining whether a jury instruction is misleading, the instruction as a whole must be considered. If, when considered as a whole, the instruction correctly advises the jury as to the law, it is sufficient even if a part of the instruction standing alone may be insufficient or erroneous. *State v. Halvorson*, 346 N.W.2d 704, 709 (N.D.1984); *State v. Skjonsby*, 319 N.W.2d 764, 774 (N.D. 1982). If a jury instruction, when read as a whole, is erroneous, relates to a subject central to the case, and affects the substantial rights of the accused, it is ground for reversal. *State v. Reich*, 298 N.W.2d 468, 471 (N.D.1980).'"

*State v. White*, 390 N.W.2d 43, 44–45 (N.D. 1986).

The Supreme Court of the United States has also addressed the constitutionality of a jury instruction presumption. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). This Court has previously summarized *Sandstrom* as follows:

"In *Sandstrom, supra,* the Supreme Court held that the jury instruction 'The law presumes that a person intends the ordinary consequences of his voluntary acts,' violates the Due Process Clause of the Fourteenth Amendment. According to the Court, the question of 'whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction.' *Sandstrom, supra,* 442 U.S. at 514, 99 S.Ct. at 2454, 61 L.Ed.2d at 45. Justice Brennan, writing for a unanimous Court, reasoned that

the jury may have interpreted the instruction impermissibly as a conclusive presumption or as shifting the burden of persuasion to the defendant on the critical element of intent. *Sandstrom, supra,* 442 U.S. at 517–518, 99 S.Ct. at 2456, 61 L.Ed.2d at 46–47. The Court held that the presumption is unconstitutional because either interpretation violates the due-process command that the State prove every element of a criminal offense beyond a reasonable doubt."

*State v. Trieb*, 315 N.W.2d 649, 652 (N.D. 1982).

In *Trieb*, this Court adopted the *Sandstrom* view in interpreting the constitutionality of a jury instruction presumption. Trieb was charged with murder in that he "intentionally" and "knowingly" caused the death of another human being. The instruction "It is presumed, however, that an unlawful act was done with unlawful intent," was included in the charge given to the jury on intent. In finding that the instruction in *Trieb* was unconstitutional, we said:

"As in *Sandstrom*, the element of 'intent' was a critical component of the crime charged. Sandstrom was charged with 'deliberate homicide' in that he 'purposely or knowingly' caused the death of a human being. Trieb was charged with 'intentionally or knowingly' causing the death of another human being. Compare *State v. Chyle, supra* [297 N.W.2d 409 (N.D.1980)] [requisite mental state was recklessly]. Like Sandstrom's jurors, the members of Trieb's jury may have been misled by the instruction. They could have regarded the presumption as mandatory—an indisputable direction to find the requisite intent once convinced that the unlawful act had been committed. Like Sandstrom's jurors, the jurors in this case 'were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it.' *Sandstrom, supra,* 442 U.S. at 515, 99 S.Ct. at 2454, 61 L.Ed.2d at 45. The possibility that the jurors may have viewed the presumption as shifting the burden of persuasion to the

defendant, a possibility condemned in *Sandstrom*, also exists in this case. Trieb's jurors were not told that the presumption could be rebutted at all. *Sandstrom, supra,* 442 U.S. at 517, 99 S.Ct. at 2455–2456, 61 L.Ed.2d at 46."

*Trieb* at 652.

In *Trieb* we also rejected the argument that the error in the presumption was cured by additional instructions given on the "interpretation of the evidence" and the "lack of criminal responsibility." We recognized, however, that:

"*Sandstrom* does not invalidate the use of all presumptions and inferences. To the contrary, that decision and *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), validate, under certain circumstances, the use of permissive inferences and rebuttable presumptions which merely shift the 'burden of production' to the defendant."

*Trieb* at 654, n. 6.

In the instant case, the trial court gave an additional presumption instruction which qualified the legal effect of the presumption given in the previous instruction. In *Trieb,* we noted that no such instruction was given:

" 'Given the common definition of "presume" as "to suppose to be true without proof" ... and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction' [*Sandstrom, supra,* 442 U.S. at 517, 99 S.Ct. at 2456, 61 L.Ed.2d at 46] in either of the two ways held unconstitutional in *Sandstrom.*"

*Trieb* at 652.

The Supreme Court of the United States has recently dealt with the issue of a presumption in a jury instruction in *Carella v. California,* 491 U.S. ——, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989). In *Carella,* the defendant was convicted of grand theft for failure to return a rented car. In analyzing two presumption instructions[7] as to core elements of the crime, the court said:

"We explained in *Francis* and *Sandstrom* that courts should ask whether the presumption in question is mandatory, that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts. *See Sandstrom, supra,* at 514, 99 S.Ct., at 2454. The prosecution understandably does not now dispute that the instructions in this case were phrased as commands, for those instructions were explicit and unqualified to that effect and were not explained elsewhere in the jury charge to be merely permissive."

*Carella,* 109 S.Ct. at 2420. No other qualifying instructions were given. The Supreme Court found this to be a conclusive presumption, and thus, violative of the Fourteenth Amendment. In addressing the defendant's harmless-error argument, the Court said that it would not decide that issue, but would remand to the state court to consider the issue, if it so chose. The Court went on to say:

"In *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), we again said that a *Sandstrom* error is subject to the harmless-error rule.... In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury.... In that event the erroneous instruction is simply superfluous: ... We also observed that although we have the authority to make the harmless error determination ourselves, we do not ordinarily do so. Hence, we remanded the case for the lower court to make that determination in the first instance."

*Carella,* 109 S.Ct. at 2421.

We conclude that the jury instructions, taken as a whole, could not have been

---

7. Carella's jury was instructed that a person "shall be presumed to have embezzled" a vehicle if it is not returned within five days of the expiration of the rental agreement and that "intent to commit theft by fraud is presumed" from failure to return rented property within 20 days of demand. *Carella v. California,* 491 U.S. ——, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218, 222 (1989).

understood by reasonable jurors to require them to conclude from the presumed fact, irrespective of other facts causing them to have a reasonable doubt, that the requisite intention of permanently depriving another of the merchandise was present. We believe that the qualifying instruction on presumption made it clear to the jury that the presumption was permissive only and that they were allowed to find the element of intent only if the city proved the predicate facts beyond a reasonable doubt.

Accordingly, the judgment of conviction is affirmed.

GIERKE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, dissenting.

In *State v. Trieb*, 315 N.W.2d 649, 654 n. 6 (N.D.1982), we observed that: "The key to satisfying *Sandstrom* is to explain to the jury the legal effect of the presumption. *Sandstrom* does ... clearly invalidate all conclusive presumptions and those rebuttable presumptions which shift the burden of persuasion to the defendant." We further observed that: "The possibility that the jurors may have viewed the presumptions as shifting the burden of persuasion to the defendant, a possibility condemned in *Sandstrom*, also exists in this case." *Trieb, supra* at 652. Although, contrary to the facts in *Trieb*, here the jury was told that the presumption could be rebutted, I am not convinced that the jury instructions clearly explained that the rebuttable presumption did not shift the burden of persuasion, only the burden of production. I therefore respectfully dissent.

LEVINE, Justice, dissenting.

I respectfully dissent. I believe a reasonable juror could have understood the instructions at issue to create a mandatory presumption that shifted to the defendant the burden of persuasion on the element of intent, once the State had proved the predicate facts.

Under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), both mandatory conclusive presumptions, which remove the presumed element from the case once the State has proved the predicate facts, and mandatory rebuttable presumptions, which require the jury to find the presumed element unless the defendant rebuts the presumption, are unconstitutional. *See Sandstrom v. Montana*, 442 U.S. 510, 517–18, 99 S.Ct. 2450, 2455–56, 61 L.Ed.2d 39 (1979); *Francis v. Franklin*, 471 U.S. 307, 314 n. 2, 105 S.Ct. 1965, 1971 n. 2, 85 L.Ed.2d 344 (1985). This case involves the latter type, that is, the mandatory rebuttable presumption.

A mandatory rebuttable presumption relieves the State of its affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding. *Francis v. Franklin, supra*, 471 U.S. at 317, 105 S.Ct. at 1972. Such an instruction violates the due process clause. *Id.*

The dispositive question in this case is whether a reasonable juror could have understood the instructions at issue, taken as a whole, to create a mandatory rebuttable presumption that shifted to the defendant the burden of persuasion on the element of intent once the State had proved the predicate facts. *Francis v. Franklin, supra*, 471 U.S. at 316, 105 S.Ct. at 1972.

*Francis v. Franklin* involved jury instructions in a murder prosecution in which the defendant's sole defense was lack of the requisite intent to kill. The trial judge instructed the jury: "The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted." *Id.* at 309, 105 S.Ct. at 1968. The United States Supreme Court held that the jury instructions violated due process because a reasonable juror could have understood the charge to create a mandatory presumption that shifted to the defendant the burden of persuasion on the presumed element of intent. *Id.* at 325, 105 S.Ct. at 1977. In effect, the instruction commanded the jury to find the presumed

element of intent unless the defendant's evidence persuaded it not to. *Id.* at 317, 105 S.Ct. at 1972. The Fourteenth Amendment prohibits the State from using evidentiary presumptions which have the effect of relieving the State of its burden of persuasion on every essential element of a crime. *Id.* at 313, 105 S.Ct. at 1970.

Here, as in *Francis,* the instruction is "cast in the language of command." *Id.* at 315, 105 S.Ct. at 1971. A person concealing merchandise "shall be presumed" to have taken it. Furthermore, "[a] presumption is an inference ... which the law *expressly directs* to be drawn" and which "substitutes for evidence and *governs you* in finding the facts." (My emphasis.) While the instruction informs the jury that the presumption may be "disproved" by the evidence, it does not tell the jury that the defendant does not have the burden of disproof or of nonpersuasion. To the contrary, the instructions strongly suggest that "because the law regards the facts giving rise to the presumption as 'strong evidence of the fact presumed,'" the presumption is mandatory once the predicate facts are established unless the defendant persuades the jury such a finding is unwarranted. The jurors were not told they had a choice or that they were free to infer the presumptive fact or not. *See Francis v. Franklin, supra,* 471 U.S. at 316, 105 S.Ct. at 1972.

Nor do the general instructions on the State's burden of persuasion and the defendant's presumption of innocence overcome or dissipate the constitutional error in the instruction above cited. *See id.* at 319–20, 105 S.Ct. at 1973–74. The general instructions here did not explain the allocation of burdens so clearly that a reasonable juror would have understood that the burden of persuasion remained with the State and did not shift to the defendant. *See id.* at 319, 105 S.Ct. at 1973.

Because I am unsure whether the jury relied upon the evidence or upon the presumption to support the conviction, I conclude the error in the instructions is not harmless. *See Carella v. California,* 109 S.Ct. 2419, 2423 (Scalia, J., concurring). In my view, it is not beyond reasonable doubt that concealment of merchandise conclusively establishes intent to conceal and intent to deprive permanently so that no rational jury could find that the defendant concealed the merchandise but did not intend to shoplift. *See Rose v. Clark,* 478 U.S. 570, 580–81, 106 S.Ct. 3101, 3107–08, 92 L.Ed.2d 460 (1986).

I would reverse and remand for a new trial.