500 N.W.2d 603 (1993)
In the Interest of K.S., a Child.
Damon ANDERSON, Assistant State's Attorney, Petitioner and Appellant,
v.
K.S., a minor, C.Y., mother, J.S., father, Respondents and Appellees.
Civ. No. 920279.
Supreme Court of North Dakota.
May 26, 1993.
Damon E. Anderson (argued), Asst. State's Atty., Grand Forks, for petitioner and appellant.
Gary E. Euren (argued), Grand Forks, for respondents and appellees.
MESCHKE, Justice.
The State appeals the part of a juvenile court order that set aside a referee's finding that K.S., a 15-year-old girl, committed the unruly act of being a minor in possession of alcohol. We affirm.
At 1:53 a.m. on August 25, 1992, police went to a house in Grand Forks on a "loud party" complaint. Officer Mark Ellingson knocked several times, without response until he announced himself. As someone came to answer the door, Ellingson realized that "juveniles, began running upstairsI could hear them running upstairs and I could also hear them hiding within the house." Inside, Ellingson found one bottle of vodka, nine opened cans of beer, and numerous empty beer containers. The alcoholic beverages appeared accessible to anyone in the house.
Knowing that alcoholic beverages were there, K.S. had gone to the party to say good-bye to friends before she moved out of town the next day. K.S. was there for about 30 minutes, but she neither took alcoholic beverages to the party nor consumed them while there. When police arrived, K.S. ran upstairs and hid in a closet with a male youth who had been drinking.
*604 The State petitioned the juvenile court to declare K.S.
a DELINQUENT CHILD in that she is alleged to have committed the offense of INTERFERING WITH, OBSTRUCTION, AND SO FORTH PUBLIC OFFICERS OR EMPLOYEES in violation of Section 9-0204 of the Ordinances of the City of Grand Forks, and the unruly offense of MINOR IN POSSESSION OF AN ALCOHOLIC BEVERAGE in violation of Section 5-01-08 of the North Dakota Century Code....
Under a standing order of reference, the judicial referee held a hearing. From a stipulation, the referee found that K.S. had committed the delinquent act of interference. After hearing testimony, the referee also ruled that K.S. had committed the unruly offense of minor in possession of an alcoholic beverage. NDCC 27-20-02(10) says:
"Unruly child" means a child who:
* * * * * *
e. Has committed an offense in violation of section 39-08-18 or purchased, attempted to purchase, possessed, or consumed alcoholic beverages;....
The referee found that "said minor was located at a party in a house ... where alcoholic beverages were present." He concluded that K.S. was both delinquent and unruly, and that she needed "treatment or rehabilitation" as an unruly child.
K.S. requested review by the juvenile court. The juvenile court confirmed the referee's finding of interference because K.S. "was located hiding in the house in an attempt to elude the police officer investigating the party," and concluded that K.S. was "in need of treatment or rehabilitation as a delinquent child." However, the juvenile court set aside the conclusion that K.S. had committed the unruly act of possession of alcohol. The court reasoned that
the mere presence of a minor at a location where alcoholic beverages are present does not constitute a violation of that statute, absent proof that Miss S was responsible for purchasing any alcohol, consuming or intending to consume any alcohol, or for exercising any control over any of the alcohol. That proof simply does not exist in the evidence presently before the Court.
The State appeals.[1]
District courts are authorized to "assign a referee to preside in any case or proceeding provided for in title 14, chapter 27-20, and chapter 28-25 pursuant to rules of the supreme court." NDCC 27-05-30. Chapter 27-20 includes all juvenile matters. The district court assigned this juvenile case to the referee under a standing order of reference. In such cases, "[t]he findings and recommendations of the judicial referee are deemed to have the effect of an order of the district court until superseded by a written order of a district court judge." Administrative Rule 13, § 10(a), North Dakota Supreme Court Administrative Rules and Orders. Section 10(c) of AR 13 also directs: "In the absence of a review pursuant to Section 11, a district court judge shall confirm, modify, or reject the findings and recommendations of the judicial referee...."
Section 11 of AR 13 says: "A review of the findings and recommendations ... shall be ordered if a party files a written request for a review.... The review by a district court judge shall be a review of the record, unless the court orders a hearing of the proceeding." Here, K.S. requested a review under the order of reference that entitled "any party to a proceeding before the Judicial Referee ... to have the matter heard by a District Court Judge" upon proper request. The district court conducted "a complete and thorough review of all evidence in this matter" from the transcripts.[2]
*605 In this case, the juvenile court accepted the referee's findings of fact, but determined that they led to a different conclusion of law. Of course, "a trial court's conclusions of law are not subject to the clearly erroneous rule applicable to findings of fact, and are thus fully reviewable upon appeal." Jarmin v. Shriners Hospitals For Crippled Children, 450 N.W.2d 750, 752 (N.D.1990). In any event, our review of a juvenile court's decision is anew on the record.
Review of a juvenile court judgment is controlled by NDCC 27-20-56:
An aggrieved party, including the state or a subdivision of the state, may appeal from a final order, judgment, or decree of the juvenile court to the supreme court.... The appeal must be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court.
Appellate review of the juvenile court is equivalent to the former procedure of trial de novo; therefore, we independently review the evidence. In Interest of B.S., 496 N.W.2d 31, 32 (N.D.1993); In Interest of J.D.Z., 431 N.W.2d 272, 274 (N.D.1988). As NDCC 27-20-56 directs, our review is anew, with appreciable weight given to the findings of the juvenile court.
K.S. was charged under NDCC 5-01-08 with possession of alcoholic beverages. The relevant part of that law says:
Except as permitted in this section and section 5-02-06, any person under twenty-one years of age purchasing or attempting to purchase alcoholic beverages, consuming alcoholic beverages other than during a religious service, being under the influence of alcoholic beverages, or being in possession of alcoholic beverages, or furnishing money to any person for such purchase, or entering any licensed premises where alcoholic beverages are being sold or displayed, except a restaurant when accompanied by a parent or legal guardian, or in accordance with section 5-02-06, or if the person is a law enforcement officer entering the premises in the performance of official duty, is guilty of a class B misdemeanor.
The State argues that "K.S. had knowledge of the contraband and she as well as her witness testified that the alcoholic beverages were available to anyone who desired them," and that "K.S. could not and did not avail herself of the affirmative defense ... of unwitting or unknowing possession." Therefore, the State says, "she is strictly liable for the offense of minor in possession of an alcoholic beverage."
The State cites our decision in State v. Morris, 331 N.W.2d 48 (N.D.1983), to apply the concept of "constructive possession," *606 and in State v. Michlitsch, 438 N.W.2d 175 (N.D.1989), to contend that the only defense to a strict possession crime is the affirmative one that the accused "unwittingly or unknowingly possessed the controlled substance." We conclude that the correct interpretation of "possession" in this statute makes these precedents inapposite.
No mental state for culpability is defined in NDCC 5-01-08. No guidance on that subject is given elsewhere in the code.[3] For another criminal statute outside of the Century Code title on crimes, we said: "Section 39-08-07 which includes no culpability requirement is a strict liability offense, punishable without regard to intent, knowledge, willfulness, or negligence." State v. Nygaard, 447 N.W.2d 267, 271 (N.D.1989) (citing State v. Olson, 356 N.W.2d 110, 112 (N.D.1984)). Similar reasoning extends here. Accordingly, we construe NDCC 5-01-08 to create a strict liability crime.
Still, Olson said: "Whether an offense is punishable without proof of intent, knowledge, willfulness, or negligence is a question of legislative intent to be determined by the language of the statute in connection with its manifest purpose and design." 356 N.W.2d at 112. Moreover, "[w]ords used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears,...." NDCC 1-02-02. See Coldwell BankerFirst Realty v. Meide & Son, 422 N.W.2d 375 (N.D.1988) (in interpreting statutes, words must be given plain, ordinary and commonly understood meaning, and consideration should be given to ordinary sense of statutory words, context, and purpose prompting enactment). Although the North Dakota Century Code does not define "possession," Webster's Third New International Dictionary 1770 (1971) says that it ordinarily means "the act or condition of having in or taking into one's control or holding at one's disposal."
To begin our analysis, we heed the general theory of criminal possession:
The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.
Black's Law Dictionary 1163 (6th ed.1990). A respected authority adds:
Constructive possession, which is simply a doctrine used to broaden the application of possession-type crimes to situations in which actual physical control cannot be directly proved, is often described in terms of dominion and control. It is not uncommon, however, for constructive possession to be even more broadly defined to include as well circumstances in which the defendant had the ability to reduce an object to his control.
1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law, § 3.2(e) (1986) (footnotes omitted). When actual physical control is absent, therefore, constructive possession may be determined from ability and intent to control.
A juvenile's responsibility for conduct prohibited by NDCC 5-01-08, then, depends on the kind of "possession" prohibited. The "manifest purpose and design" of NDCC 5-01-08 is to dissuade minors from consuming alcohol. While the legislative history of NDCC 5-01-08 is unrevealing on the kind of "possession" prohibited, it is difficult to imagine how this statute's objective would be effectuated by convicting minors of a crime when they have not actually taken alcohol into their control. *607 The plain language of this statute, together with its purpose, lead us to the conclusion that, under these circumstances, a minor is culpable only for actual, not constructive, possession of alcohol.
By confining this strict liability offense to actual possession of alcohol, we avoid any implication that a minor may be chargeable when parents or guardians keep alcoholic beverages in the home for their own use. There would be an obvious enforcement difficulty in a broader construction that included "constructive possession," because a minor might exercise dominion and control over numerous places in a home where alcohol is kept, and could thus be said to be in possession. As in Aanenson v. Bastien, 438 N.W.2d 151 (N.D.1989), we construe an ambiguous statute to avoid an absurd meaning. Therefore, this strict liability offense depends on actual possession.
The juvenile referee did not find that K.S. had actually possessed an alcoholic beverage. Rather, the referee concluded that "constructive possession" applied. The referee reasoned:
Now the type of possession we're talking about pursuant to [State v. Morris] is what's called constructive possession ... if you have access or ability to get ahold of the contraband. See you're not charged with drinking, you're charged with being minor in possession. And it is constructive possession pursuant to the State versus Morris and we're just looking to that today for the definition of a constructive possession....
The Morris definition of constructive possession requires "power and capability to exercise dominion and control over the contraband." 331 N.W.2d at 53. Under this statute, the lack of actual control makes the referee's conclusion of possession inappropriate.
We recently decided another juvenile appeal on the element of "control." In Interest of J.D., 494 N.W.2d 160 (N.D.1992). J.D. appealed a juvenile court order confirming a referee's determination that he committed the delinquent act of unauthorized use of a motor vehicle. The offense required the State to prove, beyond a reasonable doubt, that the juvenile took, operated, or exercised control over another's vehicle. Reversing the juvenile court, we focused on the language "exercises control," and said, "in its ordinary sense, we conclude that it requires an actor to exercise some degree of authority, direction, or command over the car." Id. at 164. We held that J.D.'s "mere presence in this moving car, without evidence that he exercised authority, direction or command over the car, is insufficient, as a matter of law, to support the juvenile court's determination." Id. at 165. Similar reasoning applies in this case.
The juvenile court properly relied upon our decision in City of Wahpeton v. Wilkie, 477 N.W.2d 215 (N.D.1991). In that case, the juvenile defendant was a co-renter with another man, who invited friends to their apartment for a party with alcohol available. The defendant neither joined the party nor drank any of the alcohol, although he later returned and was present at the apartment when it was investigated. Police officers found alcohol in the possession of an underage person at the party and, when they discovered that Wilkie was the host's roommate, the police charged Wilkie with violation of the possession ordinance.
Citing In Interest of R.B., 108 Wis.2d 494, 322 N.W.2d 502 (Ct.App.1982), in which the Court of Appeals of Wisconsin also considered a strict-liability-alcohol statute, we said that "a conviction based on constructive possession requires that the facts permit the inference of an intent to possess." Wilkie at 216. "Unless actual control exists, there must be found from the surrounding facts and circumstances, aided by reasonable inferences, an intent to exercise control over the prohibited item." Id. at 216-17 (quoting R.B., 322 N.W.2d at 504). Justice VandeWalle, concurring, stated the proposition more carefully: "[T]here simply is not enough evidence to show Wilkie's power and capability to exercise control `in a realistic and practical sense,' [over] the area, i.e., the apartment. It follows there can be no inference from *608 his mere presence in the apartment that Wilkie had constructive possession." Id. at 218. While the facts in Wilkie are not identical to these, the reasoning is nevertheless apt here.
R.B., 322 N.W.2d 502, was factually similar to this case. The youth had attended a beer party with friends, but he "denied obtaining beer, drinking beer, or intending to drink beer." Id. at 503. The trial court found that R.B. "was at the party to talk and visit with others, but did not drink any beer. He knew it was a beer party and beer was available but was there to talk and just be there." Id. Nevertheless, the trial court convicted the juvenile. Reversing, the court of appeals held that
the mere presence of R.B. at the party, even coupled with his knowledge of the presence of beer and its accessibility to him, is insufficient to constitute possession for purposes of [the statute].... [T]he opportunity to possess, standing alone, does not establish possession. There must additionally be the exercise of some dominion or control over the substance.... To be functional, the dominion and control necessary to permit conviction based on constructive rather than actual possession requires that the facts permit the inference of an intent to possess.
Id. We agree.
Of course, the evidence presented by the State in a constructive-possession prosecution will, by definition, be circumstantial. Here, the State focuses on the fact that K.S. went to the house, knowing that alcohol was present, and remained there for some 30 minutes. However, those circumstances of knowledge and proximity alone are not enough to establish actual possession, without some evidence that K.S. was there to drink alcohol.
We conclude that, under NDCC 5-01-08, "possession" requires that a minor exercise some degree of actual dominion or control over an alcoholic beverage. The record in this case simply fails to show that K.S. actually possessed or controlled the alcoholic beverages available at the party. As the juvenile court ruled, K.S.'s mere presence in a house where alcohol is accessible, without any actual control of the alcohol, is insufficient, as a matter of law, to support a determination of minor in possession of alcohol.
We affirm the juvenile court's order setting aside the conclusion that K.S. committed the unruly act of being a minor in possession of alcohol.
VANDE WALLE, C.J., and LEVINE, J., concur.
LEVINE, concurs in the result.
NEUMANN, Justice, concurring.
I concur with the majority's conclusion that, under these circumstances [emphasis added], a minor is culpable only for actual, not constructive, possession. I write separately to emphasize that the circumstances in this case are significantly different from those in which alcohol is found in an automobile full of minors.
NOTES
[1] No double jeopardy question has been raised. Compare State v. Meyer, 494 N.W.2d 364, 366 (N.D.1992) and Breed v. Jones, 421 U.S. 519, 532, 95 S.Ct. 1779, 1787, 44 L.Ed.2d 346 (1975).
[2] This court recently considered a standard for the district court's review of a referee's findings in a civil case under title 14 of the North Dakota Century Code. Benson v. Benson, 495 N.W.2d 72 (N.D.1993). We invoked the "clearly erroneous" standard of N.D.R.Civ.P. 53(f)(2). Id. at 77.

Still, the civil rule at N.D.R.Civ.P. 53, on "masters," does not deal with statutorily authorized references, but only with "exceptional" and complex civil cases where reference is not otherwise authorized. We recently recognized this distinction in Rueckert v. Rueckert, 499 N.W.2d 863, 865-66 (N.D.1993):
In contrast, Rule 53, N.D.R.Civ.P., is a special-purpose rule of civil procedure which authorizes appointment of a special master for complex matters. Dakota Grain Systems, Inc. v. Rauser, 435 N.W.2d 205 (N.D.1989). Reference to a special master is the "exception and not the rule," and in non-jury actions, "reference may be made only upon a showing that some exceptional condition requires it." Rule 53(b), N.D.R.Civ.P.
Correspondingly, in the federal system, from which our N.D.R.Civ.P. 53 is derived, references to magistrates categorically authorized by statute are not governed by F.R.Civ.P. 53. See 28 U.S.C. 636(b) (1988). F.R.Civ.P. 53(f) says: "A magistrate is subject to this rule only when the order referring a matter to the magistrate expressly provides that the reference is made under this Rule."
Both the federal system and North Dakota differentiate between those standing references made under statute and those made specially under the rule. Compare the similarity of locution in Sections 10 and 11 of AR 13 with that in 28 U.S.C. 636(b)(1)(C):
Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.
[3] The Century Code title on crimes says: "If a statute or regulation thereunder defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is willfully." NDCC 12.1-02-02(2). However, we have held that "Section 12.1-02-02(2), applies only to the offenses or crimes described in Title 12.1, N.D.C.C.," and not to crimes defined outside of title 12.1. City of Dickinson v. Mueller, 261 N.W.2d 787, 789 (N.D. 1977).