**In the Interest of F.N.D., A Child.**

**Marlys BAKER, Petitioner and Appellee,**

**v.**

**W.F., Mother, Respondent and Appellant,**

**F.D., Father; F.N.D., Child; and her Guardian ad Litem, Wayne D. Goter, Attorney at Law, Respondents.**

**Civil No. 960050.**

Supreme Court of North Dakota.

Oct. 3, 1996.

William D. Schmidt, Schmitz, Moench & Schmidt, Bismarck, for respondent and appellant; submitted on brief.

Kristine Paranica and Bruce A. Romanick, Assistant State's Attorneys, Burleigh County State's Attorney's Office, Bismarck, for petitioner and appellee; submitted on brief.

Wayne D. Goter, Bismarck, Guardian ad Litem.

NEUMANN, Justice.

W.F. appeals the juvenile court's order confirming the judicial referee's recommendation prohibiting W.F. and her minor child, F.N.D., from having contact with W.F.'s ex-boyfriend's mother. We affirm.

On September 5, 1995, Chad Klein, W.F.'s live-in boyfriend, struck W.F.'s four-year-old daughter, F.N.D., with a belt. Three days later, W.F. found Klein in F.N.D.'s bedroom, trying to force F.N.D. to perform oral sex on him. Klein was subsequently charged for the sex offense in district court, and a no-contact order was issued in district court prohibiting Klein from being in contact with W.F. and F.N.D.

On October 11, 1995, Burleigh–Morton Child Protection Services petitioned the juvenile court to find F.N.D. deprived under N.D.C.C. § 27–20–02. On December 18, 1995, after W.F. admitted that F.N.D. was a deprived child, the juvenile court referee found F.N.D. deprived under N.D.C.C. § 27–20–02. The referee recommended legal custody of F.N.D. be placed with Burleigh County Social Services for eighteen months. In addition, the juvenile court entered its own no-contact order, prohibiting W.F. and F.N.D. from having any contact with Klein or Klein's mother for eighteen months. On January 8, 1996, the juvenile court judge confirmed the judicial referee's recommendations.

W.F. challenges the juvenile court's order restricting both W.F. and F.N.D. from having contact with Klein's mother, who was also F.N.D.'s day care provider. W.F. argues there is no evidence indicating contact with Klein's mother negatively impacts F.N.D. Furthermore, W.F. contends changing day care providers is not in F.N.D.'s best interests because F.N.D. is familiar and comfortable with Klein's mother.

■ Disposition of a deprived child is governed by N.D.C.C. § 27–20–30. This statute allows a juvenile court to fashion orders that are "best suited to the protection and physical, mental, and moral welfare of the child." Our review of a juvenile court's decision is similar to trial de novo. *In Interest of K.S.*, 500 N.W.2d 603, 605 (N.D.1993). Under N.D.C.C. § 27–20–56, we must independently review the files, records, and minutes or transcripts of the evidence, giving appreciable weight to the findings of the juvenile court. After an independent review of the evidence in this case, we agree with the juvenile court's disposition.

■ The judicial referee's recommendation prohibiting contact with Klein's mother was based on the concern that F.N.D. may have to testify against Klein for the criminal charges. The referee believed it would put unreasonable pressure on F.N.D. to ask her to testify against her day care provider's son.

At the juvenile court hearing, both F.N.D.'s Guardian ad Litem and the Assistant State's Attorney prosecuting Klein's criminal charges addressed serious concerns with allowing Klein's mother to continue to provide day care. F.N.D.'s Guardian ad Litem testified that allowing Klein's mother to care for F.N.D. would place F.N.D. in a very "awkward" position. We believe his concern is legitimate. The juvenile court ordered F.N.D. to attend a sexual abuse treatment program to help her recover from Klein's abuse. Placing F.N.D. in the care of her abuser's mother, while simultaneously trying to rehabilitate F.N.D. from the acts of her abuser, could be extremely confusing and difficult for the five-year-old child. It is reasonable to believe that F.N.D.'s interests would be better served in an environment not affiliated with her abuser.

The Assistant State's Attorney argued that allowing F.N.D. to have a continued relationship with Klein's family could provide Klein with the opportunity to communicate with the child through the mother. Again, we find this to be a valid concern. If F.N.D. remains in the care of Klein's mother, the possibility of Klein influencing F.N.D.'s testimony, or at least, coming in contact with F.N.D., is very real. Significantly, the record suggests that Klein lives with his mother. W.F.'s testimony revealed one incident when Klein had to be contacted before F.N.D. could be dropped off with Klein's mother, to ensure that Klein would not be at his mother's home when F.N.D. arrived. Coincidentally, Klein went to W.F.'s house while F.N.D. was at his mother's home because he

had no other place to go. Contact of this nature is in violation of the no-contact order and should be avoided.

Even if Klein were not living with his mother, placing F.N.D. with Klein's mother instead of a neutral day care provider increases the risk that F.N.D. and Klein will cross paths. This is a serious concern considering W.F.'s past relationship with Klein, and her inability to remove F.N.D. from Klein when it was clearly in F.N.D.'s best interest. Testimony from the juvenile court hearing revealed W.F. failed to report the September 5, 1995, incident of Klein's physical abuse; attempted to recant the sexual abuse allegations against Klein after September 8, 1995; and, attempted to continue her relationship with Klein after both assaults occurred. In addition, the Burleigh Child Protection Services petition indicated that neighbors had reported seeing Klein at W.F.'s house while F.N.D. was home, after the district court had issued the no-contact order. Under N.D.C.C. § 27–20–30, the court should create conditions that will provide the child with adequate protection. In consideration of W.F.'s past behavior, reasonable measures must be enforced to ensure F.N.D. and Klein do not have contact.

We recognize, during 1995, F.N.D. became familiar with Klein's mother as her day care provider. Normally, it is in a child's best interest to maintain stability. However, here, placing F.N.D. with her normal day care provider means placing F.N.D. with her abuser's mother. Consequently, we agree it is in F.N.D.'s best interest to be placed with another day care provider.

We, therefore, affirm the juvenile court's confirmation of the judicial referee's recommendations and uphold the no-contact order.

VANDE WALLE, C.J., and MARING and SANDSTROM, JJ., and JAMES M. BEKKEN, District Judge.

James M. BEKKEN, District Judge, sitting in place of MESCHKE, J., disqualified.